**Simon SILBERBERG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 78 C 2799.

United States District Court, E. D. New York.

Oct. 23, 1981.

Jack Cagan, New York City, (Kalman V. Gallop, New York City, Trial Counsel), for plaintiff.

Edward R. Korman, U.S. Atty., E.D.N.Y., Brooklyn, by Jan F. Constantine, Asst. U.S. Atty., and M. Carr Ferguson, Asst. Atty. Gen., Tax Division, U.S. Dept. of Justice Washington, D. C., by James M. Shaker, Washington, D. C., Trial Atty., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff ("Silberberg") commenced this action to challenge a 100% penalty assessment in the sum of $15,037.29 made against him by the Commissioner of Internal Revenue under §§ 6672 and 6671 of the Internal Revenue Code of 1954 ("Code"), and to recover $140.76 he paid in partial satisfaction thereof. The penalty was imposed on plaintiff based on determinations that he was a person responsible for the collection and withholding of income and Federal Insurance Contribution Act ("FICA") taxes from the wages of employees of Art Textile Finishing & Dyeing Co. ("Art Textile") during the last two quarters of 1972, which he willfully failed to remit to the government. The government counterclaimed for the balance of the penalty assessment plus interest. Following a bench trial of the issues of fact and law, the Court rejects plaintiff's challenge to the assessment and judgment will be directed for the government on its counterclaim. This decision constitutes the Court's findings and conclusions as required by Rule 52(a), F.R.Civ.P.

Under sections 3102 and 3402(a) of the Code, Art Textile was required to withhold social security (FICA) and income taxes from the wages of its employees and to remit them to the government. The taxes required to be collected and remitted by Art Textile were to be held by it for the United States as a special trust fund. See Code § 7501. Because the taxes, once withheld, are credited to the employees whether or not they actually are paid to the government, the government's recourse for nonpayment is the employer. Among the provisions which enable the government to recover unremitted withholding taxes are Code §§ 6672 and 6671 which, in essence, give the government recourse against the responsible officers and employees of a delinquent corporation who deliberately fail

to ensure that the corporation remits the taxes. Section 6672 provides that "[a]ny person" required to collect, or truthfully account for and pay over any tax, including the FICA and income taxes involved here, who fails to perform that duty, is liable for the total amount "not paid over," while § 6671(b) defines "person" to include "an officer or employee of a corporation, ... who as such officer or employee ... is under a duty to perform the act in respect of which the violation occurs." See generally *Slodov v. United States*, 436 U.S. 238, 243–46, 98 S.Ct. 1778, 1783–84, 56 L.Ed.2d 251 (1978).

The principal issues at trial were whether Silberberg was under a duty to see that Art Textile collected and remitted the withholding taxes, and if so, whether his failure was willful. Having examined the evidence as a whole, and based on the testimony of the witnesses for the government, which the Court does not find wholly unworthy of belief, and is corroborated by other witnesses and evidence, the Court finds as follows:

Art Textile was incorporated by Silberberg on October 14, 1970, and effectively ceased operations sometime after January 1973, after transferring substantially all its assets to D & D Industries, another company which Silberberg had newly organized in New Jersey. Prior to and during the last quarters of 1972, Silberberg was part owner of two other businesses that knit fabrics (J.J.S. Knitting Mills, Inc.) and fashioned them into garments (Ginny Jones Corp.). Acting on the suggestion of one Schlosser, the president of Cashnyl Company, Silberberg had his attorney incorporate Art Textile so that garments Ginny Jones made could receive preferential treatment and be finished more quickly than by an unrelated company, which would give Silberberg's other businesses a competitive edge.

In starting up, the new company received interest-free loans from Silberberg. He also furnished the company with its textile finishing machine, which he had obtained from Cashnyl. Michael Williams and Salvatore Amodei, two of Art Textile's three full-time employees who came over from Cashnyl, testified that it was Silberberg who had hired them and Bruce Smith, the third employee (like Williams, a son-in-law of Schlosser). Silberberg also signed the lease with Cashnyl for Art Textile's space on Bergen Street in Brooklyn, and engaged Vincent Nicolosi, an ILGWU auditor he knew through J.J.S. and Ginny Jones, to do part-time accounting work for the firm.

A Chemical Bank signature card dated November 24, 1970, for Art Textile's checking account, listed as the corporation's officers: Amodei, Treasurer; Williams, Vice-President; Smith, President; and Silberberg, Secretary. The agreement opening the corporation's account was signed by Silberberg, as Secretary, and specified in the blank especially provided that checks could be issued only on the joint signatures of the corporation's Secretary and any other officer. Thus, Silberberg signed every check Art Textile issued.

Nicolosi, corroborated by Silberberg, testified that Silberberg rarely visited Art Textile, and never discussed Art Textile's financial status with the accountant until December 1972, when he expressed complete surprise on hearing from Nicolosi that the company was delinquent in remitting the withholding taxes. Though Nicolosi was himself present only once a week, the government did not seriously dispute that Silberberg's involvement with his larger operations at J.J.S. and Ginny Jones made him unavailable to supervise Art Textile daily. The day-to-day running of the company was shared by the other employees, with Smith concentrating on shipping and other office work, Williams on the machinery and running the plant, and Amodei on securing customers and handling other aspects of the business operations, including writing checks for his own and Silberberg's signature. Nicolosi, however, prepared the checks and tax forms for federal, state and city tax payments, which would be later signed by Amodei and Silberberg. Recognition of such an allocation of business activities, however, does not render inconsistent Amodei's uncontradicted testimony that Silberberg wanted to see, and in fact had to

sign every check before it went out; and for that purpose, Amodei visited him at Ginny Jones every Wednesday morning with Art Textile's bills and the checks drawn to pay them.

The Court also credits Amodei's testimony that Silberberg rarely questioned the bills until in the last two quarters of 1972, when Art Textile was experiencing cash-flow problems, Silberberg began to pick and choose which bills would be paid, according to what the company needed to continue its operations. Although Nicolosi testified it was Amodei who selected the bills to be paid and would not listen to Nicolosi's warnings about delinquent taxes, this testimony, apparently disinterested, can be reconciled with Nicolosi's understanding that Silberberg signed all the checks.

Counsel conceded that Silberberg was the "moving spirit" behind Art Textile, and it is too inconsistent with the extent of Silberberg's financial involvement in Art Textile for him not to have sought to retain fiscal, if not operational, control over the venture by reviewing all the company's financial transactions. Indeed, in an interrogatory, Silberberg sought to explain away the bank resolution requiring his signature on each check as merely the means for him to ensure the corporation's other officers did not divert the corporation's funds to themselves, to the detriment of Silberberg and other Art Textile creditors. On the other hand, Silberberg's contention that he was away traveling so much throughout the two years Art Textile was in operation that he customarily signed checks in blank and gave them to Amodei, is not credible and must be viewed as a transparent attempt to downplay his involvement with Art Textile.

■ Assessment of a tax penalty under Code § 6672 creates a prima facie case of liability against a plaintiff in a tax collection action. See *United States v. Lease*, 346 F.2d 696 (2d Cir. 1965). Accordingly, in the present action, on both the main claim challenging the assessment and the counterclaim for collection, Silberberg bears the burden of establishing by a preponderance of the credible evidence that he was not a person responsible to collect and pay over the required taxes, or that his failure so to act was not willful but merely negligent or excusable for "reasonable cause." See *Melillo v. United States*, 244 F.Supp. 323 (E.D. N.Y.1965).

■ The parties agree that the following specific facts may be relied upon in determining whether persons are responsible for payment of taxes withheld from wages of employees: (1) identity of officers, directors and shareholders of the corporation; (2) duties of the officer as outlined by the corporate by-laws; (3) ability of the individual to sign checks of the corporation; (4) identity of the individuals who were in control of the financial affairs of the corporation; (5) identity of the individuals who hired and fired employees. See *Braden v. United States*, 318 F.Supp. 1189, 1194 (D.Neb.1970); *accord, Kalb v. United States*, 505 F.2d 506, 510–11 (2d Cir. 1974). Moreover, to be a responsible person or officer under the statute, it is not necessary to be the only such person, or to have exclusive control over all corporate affairs. See *Scott v. United States*, 354 F.2d 292, 296 (Ct.Cl.1965). As was pointed out in *Burack v. United States*, 461 F.2d 1282, 1291 (Ct.Cl.1972),

"[a]uthority to cosign in effect gives one the authority to decide which creditors should be paid. Plaintiff may not have participated in the preparation of the checks, but he had the power to prevent disbursement of funds except to appropriate creditors, and there can be no question that he had as much power and authority as [his fellow corporate officers] to direct to whom checks should be drawn. What is essentially involved is '... a search for a person with ultimate authority over expenditures of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes.'" Citation omitted.)

■ While the informality of Art Textile's operations indicated that no by-laws defined the duties of its officers, the evidence amply established that Silberberg

was the financial godfather of the corporation and its Secretary; that he insisted on cosigning every check the corporation issued; and that he was the individual who hired all the corporation's employees. In these circumstances, applying the law as outlined above, it is plain that Silberberg must be considered to be a person responsible for the collection and remitting of withholding taxes, as the Commissioner determined.

■ It is also apparent that Silberberg's failure to ensure that Art Textile remitted the taxes to the government was willful. Silberberg controlled the disposition of the corporation's funds through having to approve every check that issued. His continuous, close, regular supervision of the corporation's cash disbursements through the meetings with Amodei render it highly probable that he was aware of the tax delinquencies throughout the last two quarters but nonetheless decided not to pay them. Indeed, Silberberg was confronted with a cash transaction sheet for 1973 (Exh. I) and admitted on cross-examination that after the time Nicolosi testified Silberberg was aware of the delinquent taxes, numerous checks were drawn and issued over his signature for payroll and factory supplies without payment to the government of the trust fund taxes Art Textile had withheld. In the circumstances of this case it is no excuse that other checks in this period were issued to pay other tax obligations.

In sum the Court finds that Silberberg was a person responsible for the collection and remittance of withholding income and FICA taxes, and that he willfully failed to do so. Accordingly, his claim to recover the $140.76 he paid in part satisfaction of the Commissioner's penalty assessment is denied, his challenge to the assessment rejected, and the government is awarded judgment on its counterclaim for the unpaid amount of the assessment, plus interest. The government shall submit a proposed form of judgment.

SO ORDERED.

The Clerk of Court is directed to enter judgment denying plaintiff's claim for re-lief and awarding defendant relief on its counterclaim. The Clerk is further directed to forward copies of this memorandum of decision and order to counsel for the parties.