Edward SIMPSON, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant,

v.

Thomas BYRAM, Arnold Feinstein, Frank Leeds, Martin Haubrich, Hank McManus, V. Simpson Turner, Howard O. Patterson, Miriam Corbett, Theodore V. Seiler, Gilbert Baker, David Benke and Henry Singer, Counterclaim Defendants.

Henry SINGER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Thomas L. BYRAM, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. CV–84–2364, CV–84–3097, CV–84–4637.

United States District Court, E.D. New York.

June 30, 1987.

Deborah S. Meland, Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Nolan C. Leake, King & Spalding, Atlanta, Ga., for Edward Simpson, Jr.

George L. Barnett, Mazur, Carp & Barnett, New York City, for Thomas Byram.

Larry Kars, New York City, for Arnold Feinstein.

Richard D. Koppenaal, MacDonald, Jaekel, Seavers & Ford, Ridgewood, N.J., for Frank Leeds.

Robert J. Costello, Phelan & Costello, P.C., New York City, for Martin Haubrich.

Remo Tinti, New York City, for Hank McManus, V. Simpson Turner, Howard O. Patterson, Miriam Corbett, and Theodore V. Seiler.

Gilbert Baker, pro se.

Adeline P. Malone, Summit Rovins & Feldesman, New York City, for David Benke.

Arthur Pelikow, New York City, for Henry Singer.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The cross motions for summary judgment in these consolidated actions present the question whether certain taxpayers ought to be liable to pay the 100% penalty

prescribed by 26 U.S.C. § 6672(a). That statute provides:

> General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

## I. *Background*

In 1980, the Baptist Medical Center of New York (BMC), then known as the Baptist Hospital, acquired by donation Interboro General Hospital and relocated to Interboro's physical facilities in Brooklyn, New York. At the time of the acquisition, Interboro was behind in its payment of withholding taxes to the United States.

BMC experienced financial difficulties from the time it acquired Interboro. These difficulties culminated in BMC's March 1981 filing for protection from creditors under chapter 11 of the Bankruptcy Code. In the interim, BMC had failed to pay to the United States taxes it had withheld from employees in the third quarter of 1980 and the first quarter of 1981. This failure led to an assessment by the Internal Revenue Service (IRS) of a 100% penalty against BMC's Executive Director (Thomas Byram), three of his assistants (Arnold Feinstein, Assistant Director of BMC, and Martin Haubrich and Frank Leeds, III, Assistants to the Director), and the other members of BMC's Board of Trustees (Edward Simpson, Jr., Hank McManus, V. Simpson Turner, Howard O. Patterson, Miriam Corbett, Theodore V. Seiler, Gilbert Baker, David Benke, and Henry Singer). The assessment for the third quarter of 1980 was $656,930.55; for the first quarter of 1981, it was $332,741.15. Thus, the total assessment was $989,671.70, plus statutory additions.

The actions came to this court when Edward Simpson, Jr. paid a small portion of the assessment and sued to recover that amount. The government counterclaimed against Simpson for the full assessment and joined as third-party defendants all the others against whom the IRS had made assessments for BMC's nonpayment of taxes. The court consolidated for discovery purposes the three actions listed in the caption; later, it consolidated the actions for all purposes.

There are three classes of taxpayer before the court. For the sake of convenience, they shall be referred to as "Byram" (the Executive Director), "the assistants" (Feinstein, Haubrich, and Leeds), and "the trustees" (the other taxpayers). The government has moved for summary judgment against all the taxpayers. The assistants and the trustees have moved for summary judgment against the government, but Byram has limited himself to opposing the government's motion.

## II. *The Law*

Section 6672 of the Internal Revenue Code is one part of a statutory scheme designed to ensure that taxes withheld from employees' wages and held by employers in trust for the benefit of the United States find their way to the Treasury. *See generally Purdy Co. of Illinois v. United States*, 814 F.2d 1183, 1186 (7th Cir.1987) (describing statutory scheme and observing that section 6672 brings to the government the amount to which it was entitled by way of tax). An employer like BMC may find "funds accumulated during the quarter ... a tempting source of ready cash" when it is "beleaguered by creditors." *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978) (footnote omitted). Section 6672 can be a powerful deterrent to temptation. "The statute is harsh, but the danger against which it is directed—that of failing to pay over money withheld from employees until it is too late, because the company has gone broke—is an acute one against which, perhaps, only harsh measures are

availing." *Wright v. United States,* 809 F.2d 425, 428 (7th Cir.1987).

Under section 6672,

[t]he assessment of the tax creates a prima facie case of liability, and the person against whom the penalty is levied bears the burden of establishing by a preponderance of the evidence that at least one of the two elements of section 6672 liability does not exist.

The two requirements are: 1) that the [taxpayer] was under a duty to collect, account for, and pay over the taxes; and 2) that [the taxpayer's] failure to do these things was willful.

*Schwinger v. United States,* 652 F.Supp. 464, 466 (E.D.N.Y.1987) (citations omitted); *accord, e.g., Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987) (two elements of liability); *Calderone v. United States,* 799 F.2d 254, 258 (6th Cir.1986) (taxpayer carries burden of persuasion by preponderance of evidence).

The phrase "responsible person" has become the customary shorthand to describe the first element of liability. *Purdy Co., supra,* 814 F.2d at 1185 n. 1; *see Slodov, supra,* 436 U.S. at 246 n. 7, 98 S.Ct. at 1784 n. 7; *Godfrey v. United States,* 748 F.2d 1568, 1574 n. 4 (Fed.Cir.1984). Judge McLaughlin defined the term comprehensively in his recent opinion in *Schwinger, supra:*

A "responsible person" in the context of withholding tax payment liability is one "with power and responsibility within the corporate structure for seeing that the [withheld] taxes ... are remitted to the Government.... This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds." "[D]ay to day control is ... unnecessary for a finding of responsibility," but " ' "duty" under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds.' " Responsibility has been described as depending on "whether the person had control of the disbursements of the taxpayer, that is, whether

'he had the final word as to what bills should or should not be paid and when,' " but "final" in this context indicates significant rather than exclusive control.

652 F.Supp. at 466–67 (citations omitted) (brackets and ellipses in original); *see Purdy Co., supra,* 814 F.2d at 1188 (key is control of finances and power to control who gets paid); *Wood, supra,* 808 F.2d at 415 (responsibility is matter of status, duty, and authority); *Wright, supra,* 809 F.2d at 427 (section 6672 affects any responsible person, not just employer and not just most responsible person); *Godfrey, supra,* 748 F.2d at 1574 (section 6672 cuts through organizational form to impose liability upon those actually responsible for failure to pay tax).

The second element—willfulness—does not have exactly the same meaning as in the context of criminal law. The leading case in this circuit is *Kalb v. United States,* 505 F.2d 506 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The court held:

Conduct amounting to no more than negligence is not willful for purposes of § 6672. It is, however, not necessary that evil motive or intent to defraud be proven in order to establish willfulness. *Monday* [*v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970),] defined willful action under § 6672 as "voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government." That definition has been widely accepted. *Monday* also points out, as has to be the case, that willful conduct "may also indicate a reckless disregard for obvious or known risks." [*Id.*] at 1215. Willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government.

*Id.* at 511 (citations omitted).

The conscious preference of other creditors over the United States constitutes willfulness, "even if the expenditures are necessary to remain in business." *Schwinger,*

*supra,* 652 F.Supp. at 468. This is because "[a] responsible person, knowing of the delinquency, has a duty to follow up; he cannot rely on others to fulfill section 6672 obligations." *Id.* at 469. And, as indicated in *Kalb,* actual knowledge is unnecessary to a finding of willfulness. *See Wright, supra,* 809 F.2d at 427 (taxpayer cannot escape liability by adopting "hear no evil—see no evil" policy; gross negligence establishes reckless disregard); *Calderone, supra,* 799 F.2d at 260 (no liability unless responsible person "deliberately or recklessly disregarded facts and known risks that the taxes were not being paid"); *Schwinger, supra,* 652 F.Supp. at 468 ("Willful conduct may also include a reckless disregard for obvious or known risks. . . .").

Because section 6672 tests substance rather than form, *Godfrey, supra,* 748 F.2d at 1576, cases under the statute are particularly dependent upon their facts, *Abramson v. United States,* 48 B.R. 809, 811 (E.D.N.Y.1985). The court therefore turns to the specific facts that will determine the liability of Byram, the assistants, and the trustees.

### III. *Analysis*

The facts differ significantly with respect to the three classes of taxpayer under consideration. The court shall begin with a discussion of the extreme cases—Byram on one hand, the trustees on the other—and conclude with the most difficult case, that of the assistants.

### A. *Thomas Byram*

Byram, as Executive Director of BMC, clearly had a leading role in all aspects of managing the hospital. He raises eight factual issues as to which, he contends, there are genuine disputes that preclude summary judgment: (1) whether all major BMC decisions required Byram's approval; (2) whether the failure to remit withholding taxes was willful; (3) whether the trustees, rather than Byram, controlled BMC's financial affairs; (4) whether Byram had authority to pay withholding taxes or was restricted by the trustees; (5) whether Byram ever had final responsibility for any major BMC decisions; (6) whether a decision to remit taxes would have been tantamount to closing BMC and whether Byram had authority to close BMC; (7) whether the final decision to remit withholding taxes ultimately belonged to the trustees; and (8) whether Byram had power to remit withholding taxes, since all checks required two signatures.

In short, Byram denies both that he was a responsible person and that his conduct was willful. He may avoid liability if he can prove either of these propositions by a preponderance of the evidence. But, under Federal Rule of Civil Procedure 56, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court holds that Byram has failed to demonstrate a genuine issue of material fact, Fed.R.Civ.P. 56(c), and that the government's motion for summary judgment should be granted against him.

Byram cannot deny that the assistants reported to him and apprised him of BMC's condition on a regular basis. Byram co-signed all checks, a factor considered in many cases. *See, e.g., Calderone, supra,* 799 F.2d at 261; *Gold v. United States,* 506 F.Supp. 473, 478 (E.D.N.Y.) (ability to sign checks is significant because it generally comes with ability to choose which creditors will be paid), *aff'd mem.,* 671 F.2d 492 (2d Cir.1981). Indeed, Byram decided which creditors to pay, how much to pay, and when to pay them.

In an affidavit sworn to on June 9, 1982, Byram stated that the trustees were never involved in BMC's day-to-day operations and that administrative and financial decisions respecting the quotidian operations of BMC were made by Feinstein and Leeds. As to any other matters, Byram stated that questions regarding payment "were referred to me for answers. The payment of tax arrears, when funds became available, and the assignment of receivables to the District Director [of IRS] to secure unpaid liabilities to him, were solely my decision in

my capacity as Executive Director." Whatever the motive for Byram's affidavit, it contains admissions that can lead to only one conclusion: he was a responsible person, and his failure to remit taxes was willful.

■ Of Byram's eight attempts to raise a genuine issue of material fact, seven go to his status as a responsible person; only the second goes to willfulness. Most of the seven purported issues on responsibility are resolved by Byram's affidavit and other uncontroverted evidence that he was the most powerful person in the running of BMC. His sixth argument raises a legal question: can he be deemed a responsible person when he lacked unilateral authority to close BMC, which would be the practical effect if taxes were paid? The argument misses the mark insofar as it implies that there can be no responsible person in the absence of authority to act unilaterally. As *Schwinger* observed, possession of the "final word" means "significant rather than exclusive control," 652 F.Supp. at 467, and section 6672 contemplates the possibility of more than one responsible person, *see Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981) (per curiam). Byram had the ability to direct BMC's disbursements and he was responsible to see that taxes were paid, even if that would put BMC out of business, *see Schwinger, supra,* 652 F.Supp. at 468, or jeopardize his employment, *see Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983). If the absence of an autocrat would defeat liability under section 6672, there would be a powerful incentive to scatter power and thus avoid liability. This is not the idea behind the statute, and Byram cannot escape the reach of section 6672 by pointing a finger at the assistants and trustees.

For similar reasons, the court rejects Byram's argument that he cannot be deemed a responsible person because all checks required two signatures. The record does not give rise to substantial doubt that Byram could easily obtain a second signature when he wanted it. Moreover, if Byram's argument were adopted, section 6672 could be subverted by the expedient of diffusing check-signing authority.

■ This leaves Byram's contention that his conduct was not willful. There is simply no question that Byram knew BMC had to pay taxes and chose instead to pay other creditors. Under *Kalb* and a host of other cases, that closes the discussion on willfulness.

Because Byram was a responsible person, and because his decision to pay creditors other than the United States was willful, he cannot avoid liability under section 6672. The government's motion for summary judgment is granted as against Byram.

B. *The Trustees*

■ While the court has held that Byram, at one extreme, is liable under section 6672, it concludes that the trustees, at the other extreme, are not. For the reasons that follow, the government's motion for summary judgment is denied as against the trustees, and the trustees' motions for summary judgment are granted.

> The Federal Circuit has observed that [i]n no case has an outside director of a publicly held corporation, who neither signed nor had authority to sign checks, who did not participate in the day-to-day fiscal management of the corporation, who did not control the payroll, who did not determine which creditors would be paid and which would not, and who did not own a significant fraction of the corporation's voting securities, been held a "responsible" person under § 6672.

*Godfrey, supra,* 748 F.2d at 1576. In *Godfrey,* the plaintiff was the unpaid Chairman of the Board of a struggling company. The court held that he was not a responsible person, even though he "took the lead in attempting to avoid [the company's] insolvency, negotiated emergency loans and recapitalization plans, helped to arrange for sale of corporate assets, and participated in the hiring and firing of top corporate management," *id.* It was important to Chief Judge Markey that Godfrey did not control the collection, accounting for, and payment of taxes. *Id.* Aware of the

public policy implications entailed by a too-broad reading of "responsible person," the court noted:

> To hold Godfrey a "responsible person" on the present record would be to hold as a "responsible person" every board chairman who took an active interest in the solvency of the corporation he serves. Godfrey's activities were not those of a passive "above the fray" chairman, but they do not, without more, impose or create the "duty" expressly described in the statute.

*Id.*

Finally, the court rejected the Claims Court's reliance, for "responsible person" analysis, on Godfrey's knowledge that taxes had not been paid. The Federal Circuit ruled that such knowledge may be relevant to willfulness, but not to responsibility. *Id.*

The government argues that the trustees are responsible persons because the board held monthly meetings and made financial decisions for BMC. For instance, the trustees were involved with the acquisition of Interboro General Hospital and considered the acquisition of two other facilities. In addition, the trustees were involved in the sale of BMC's prior facilities, authorized Byram to enter loan agreements, considered moving BMC's checking accounts, established room rates, entered into employment contracts, considered cancelling BMC's malpractice insurance, and authorized Byram to file a bankruptcy petition.

The government concedes that the trustees were not paid for their service, which was motivated by a charitable desire to serve the community. This, the government maintains, is not good enough: the trustees risked liability under section 6672 and lost.

The court cannot agree with the government's stringent reading of the statute. The record demonstrates that the trustees were not involved in the day-to-day operation of BMC, did not sign checks, did not decide which creditors would be paid, did not hire and fire employees, and did not involve themselves in the collection, accounting for, or payment over of withholding taxes. Congress could not have had

such individuals in mind when it spoke of "[a]ny person required to collect, truthfully account for, and pay over" taxes. 26 U.S.C. § 6672(a).

If anything, the trustees are less responsible than was the plaintiff whom the Federal Circuit found not to be responsible in *Godfrey*. Whereas Godfrey took a leading role in attempting to salvage the public corporation he served as chairman, the record demonstrates that BMC's trustees did not take a leading role. Generally, they deferred to Byram. Whereas Godfrey was an attorney who received legal fees from the corporation, *see* 748 F.2d at 1571 & n. 2, the BMC trustees served a not-for-profit corporation solely in the public interest.

For the foregoing reasons, the court is satisfied that the trustees are not responsible persons under established precedent. What is more, the precedent is amply justified by public policy. If the government's reading of "responsible person" were adopted, no rational individual would volunteer to serve on the board of a not-for-profit corporation, unless, at least, he were covered by a substantial insurance policy. There is a sufficient social value in having individuals agree to serve on the boards of hospitals, schools, houses of worship, and the like that society ought to be willing to permit such service to be unhindered by the risk of massive personal tax liability. Of course, unpaid service on the board of a not-for-profit institution should not confer automatic immunity from the strictures of section 6672. If a board does take an active role in an institution's financial affairs—particularly its tax affairs—and the institution's paid administrators use the board as a shield against liability by abdicating the responsibility to pay taxes, the board members may well be deemed responsible persons. Here, however, there is nothing to indicate that the trustees were involved with BMC's tax situation to the extent necessary to trigger liability.

At oral argument, the government cited two cases from the Ninth Circuit in support of a contention that the trustees, despite their limited role, are responsible persons. Each case is distinguishable. In *United*

*States v. Graham,* 309 F.2d 210 (9th Cir. 1962), the court noted that being a member of a corporation's board of directors does not exclude the possibility of liability, because the statute "must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred," *id.* at 212. In addition, the court refused to insulate the taxpayer from liability merely because he was not a disbursing officer of the corporation and did not sign checks. *Id.* The court of appeals remanded for a determination of "the essential question: whether the board controlled the payment of the corporation's tax debt or whether this power had by the board been delegated to some officer of the corporation," *id.* Here, the essential question has been answered by the court's conclusion that the trustees did not control payment of BMC's tax debt. Thus, the government's reliance upon *Graham* is unavailing.

It is true that the taxpayer in *Maggy v. United States,* 560 F.2d 1372 (9th Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978), was a member of a corporate board and was held to be a responsible person for a portion of the period in dispute. Maggy, however, was also president and director of the corporation, and he and his wife held 40% of its outstanding shares. *Id.* at 1373. Moreover, he was an authorized signator on corporate bank accounts and his signature alone sufficed to withdraw funds. *Id.* at 1374. This brief recitation of the facts of *Maggy* makes it clear that the case has no application to the present facts.

In light of the court's conclusion that the trustees have demonstrated that they are not responsible persons, it is unnecessary to address the question of their willfulness. The trustees' motion for summary judgment is granted.

## C. *The Assistants*

■ Byram's assistants, Feinstein, Haubrich, and Leeds, all had signature authority on BMC's general checking account. Feinstein was an authorized signatory on the payroll account and his name was affixed, by° stamp, to all payroll checks. Haubrich signed the employment tax returns during the period in issue. Haubrich and Leeds met with IRS personnel concerning BMC's failure to remit the withheld taxes, and they negotiated an installment payment agreement, which, in any event, BMC did not keep.

On the other hand, Feinstein, Haubrich, and Leeds all take comfort from the Byram affidavit discussed in Part III–A, *supra.* If Byram is to be believed, his assistants lacked authority because he had the final word.

The court finds that there are genuine issues of material fact precluding summary judgment for either side on the question of whether the assistants were responsible persons. Undoubtedly, the assistants were more involved with BMC's financial affairs and day-to-day management than were the trustees. The question is how much more, and that question cannot be answered on the current state of the record.

■ The court is satisfied, however, that the government is entitled to partial summary judgment against the assistants on the issue of willfulness. There is no doubting that the assistants knew about BMC's tax status and that they failed to remedy it. The question for trial will be whether they were responsible persons, i.e., whether they had an obligation to remedy the tax problem of which they were aware. *Cf. Schwinger, supra,* 652 F.Supp. at 470 (granting government's motion for summary judgment on issue of willfulness, denying cross motions for summary judgment on issue of responsibility).

## IV. *Conclusion*

The government's motion for summary judgment against Thomas Byram is granted. The government's motion for summary judgment against Edward Simpson, Jr., Hank McManus, V. Simpson Turner, Howard O. Patterson, Miriam Corbett, Theodore V. Seiler, Gilbert Baker, David Benke, and Henry Singer is denied, and the motions of those taxpayers for summary judgment are granted. The government's mo-

tion for summary judgment against Arnold Feinstein, Martin Haubrich, and Frank Leeds, III is granted in part, on the issue of willfulness, but denied on the issue of responsibility. The motions of Feinstein, Haubrich, and Leeds for summary judgment are denied. Counsel for the government, Feinstein, Haubrich, and Leeds are directed to appear for a status conference on August 12, 1987, at 4:30 p.m., in courtroom 5.

SO ORDERED.