James CARTER, Booker T. Jones, and Gladys Richardson, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Aliceteen TAYLOR, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 88 Civ. 0936(KC), 87 Civ. 9158(KC).

United States District Court, S.D. New York.

July 10, 1989.

Surkin & Handlin, New York City, for plaintiffs (Dean L. Surkin, of counsel.)

Benito Romano, U.S. Atty. for S.D.N.Y., for defendant (Amy Rothstein and Kaye Gardiner, of counsel.)

## OPINION AND ORDER

CONBOY, District Judge:

The captioned consolidated actions arise out of the failure to pay to the Internal Revenue Service ("IRS") income and Federal Insurance Contributions Act ("FICA") taxes. The actions were brought by plaintiffs for recovery of the portion paid by each of them to the toward the assessment of a 100% penalty imposed upon each as "responsible persons" under 26 U.S.C. § 6672(a). The Government has filed counterclaims against each plaintiff, on the theory of joint and several liability, seeking from each the 100% penalty assessment plus interest. The motion currently pending before the Court is the government's motion for summary judgment.

### I. Background

 Covenant Home Attendant Services, Inc. ("CHAS") was formed as a not-for-profit New York Corporation by members of the Convent Avenue Baptist Church. CHAS, which went out of business on October 31, 1985 with no assets of the corporation available, was formed for the purpose of providing home care services for the elderly and disabled in Harlem. Funding for CHAS was provided by the City of New York. All of the plaintiffs were officers and directors of CHAS during the last two quarters of 1984 and the first three quarters of 1985, during which time CHAS failed to pay over to the IRS withholding and FICA taxes (sometimes referred to as "trust fund taxes") on behalf of its employees. Plaintiff Aliceteen Taylor ("Taylor") was Chairperson of the Board of Directors, plaintiff Booker T. Jones ("Jones") was Vice Chairperson, plaintiff Gladys Richardson ("Richardson") was Secretary, and plaintiff James Carter ("Carter") was Treasurer. Because of their roles in CHAS, the IRS assessed a 100% penalty in the amount of $230,245.86 against each of the plaintiffs pursuant to section 6672 of the Internal Revenue Code as of July 18, 1988. Plaintiffs each paid the withheld tax for one employee for one quarter of liability in the amount of $612.50, and filed a claim with the IRS for a refund of the amount paid, attaching a "Petition and Protest" to the claim form.[1] See, e.g., Complaint filed by Taylor ("Taylor Complt.") and Exhibits appurtenant thereto. The Petitions were prepared by their attorney at that time, Jimmie L. Engram.[2] Attached to these Petitions were the minutes of the CHAS Board

---

1. By letter dated December 23, 1988, the Assistant United States Attorney handling this action informed the Court that she had been notified by letter dated November 22, 1988, that the IRS received a certified check in the amount of $276,242.75 on behalf of Booker T. Jones. Upon receipt of the check, the IRS released the liens which had been placed on the assets and property of all four of the plaintiffs. Plaintiffs continue to protest the payment of the penalty.

2. The Court rejects the plaintiffs' argument that it would be "manifestly unjust" for this Court to consider these Petitions. See Affidavit Of James Carter, sworn to July 19, 1988, at ¶ 17. Plaintiffs assert that these Petitions should be disregarded, and that they should not be bound by them, because they were prepared and signed by their former attorney Mr. Engram. Plaintiffs do not allege that Mr. Engram was not authorized to submit said Petitions, nor do they allege that there was fraud; they allege only that, upon information and belief, Mr. Engram is under suspension from the practice of law, and that he no longer serves as the attorney for the Church and CHAS. See id. Under general agency principles, papers submitted by an attorney, at the direction of and on behalf of the client, bind the client. Link v. Wabash Railroad Co., 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Since a party voluntarily chooses its attorney, it cannot later avoid consequences of the acts or omissions of its freely selected agent. See Altschuler v. Samsonite Corp., 109 F.R.D. 353, 357 (E.D.N.Y.1986) (citing Link ). Plaintiffs, as the employer of their attorney, must assume the risks of such attorney's prosecution of their case.

of Directors Meetings for March 22, 1984, May 3, 1984, June 12, 1984, July 31, 1984 and August 23, 1985 along with several memoranda. *See* Declaration of Albeda Hightower ¶ 2F and Exhibit F thereto ("Hightower Decl."). Plaintiffs claims were subsequently rejected, and the appeal to this Court followed.

CHAS had a payroll account at Manufacturers Hanover Trust and plaintiffs were the four authorized signatories. The signatures of any two of the four were necessary for the payroll checks to be honored. Hightower Decl., Ex. A. Furthermore, the Board's policy was to require, with each check forwarded for signature, a "[s]upporting invoice attached to payment vouchers detailing purpose of check (sic)." Hightower Decl., Ex. F at 8. Plaintiffs state that the voucher provision was only meant to apply to extraordinary purchases and expenses, and not to payroll checks and withholding. Affidavit of James Carter, sworn to July 19, 1988, ("Carter Aff.") at ¶ 15(a).[3] They concede the signature authority for the payroll account, yet state that actual checks were signed by the use of a machine that affixed facsimile signatures and that the checks were prepared by a bookkeeping agency designated by the City of New York, as a condition to City funding of CHAS. *See* Plaintiffs' Memorandum of Law at 3; Carter Aff. at ¶ 15(a). Because the checks were prepared by others and submitted to the Board, the plaintiffs state that they are not liable for the 100% penalty. The Government's response to the plaintiffs' claim is that this delegation of authority does not divest the Board of its responsibilities.

In addition to its allegation that the check submission procedure indicates that plaintiffs controlled all of CHAS' disbursements, the Government also asserts that the plaintiffs involved themselves in "routine business concerns such as corporate funding, bookkeeping, salaries, and hiring and firing." *See* Government's Memoran-

dum of Law at 3–4. The plaintiffs dispute this by stating that they "were not involved in the daily operations of CHAS, and only became involved to the extent of supervising the highest level administrative employees. The Board did not deal directly with every level of operation." Carter Aff. ¶ 15(b).

Finally, it is undisputed that the corporation had "bookkeeping" problems. The Government posits that the Board was aware that there was a history of late payments with respect to employee withholding and FICA taxes. However, the Board states that "to the extent that it was aware that [the payments] were being paid late, the Board took immediate corrective action," consisting of "hiring outside accountants and terminating an employee who was derelict in his duties." Plaintiffs' Memorandum of Law at 3. There is, however, nothing in the record to indicate that payments to the IRS resumed after the Board took "corrective action." Indeed, because the plaintiffs were subsequently assessed for the deficiency, the clear implication is that such payments were never made. Plaintiffs also claim they "reasonably believed" that the withholding and FICA taxes were being paid, and "to the extent that they were not paid, it was due to the embezzlement and concealment thereof by administrative employees of CHAS." Carter Aff. ¶ 18. This latter position is a clear change from the plaintiffs' former position taken in each's Petition and Protest that the reason the taxes were late in being paid was "because of a lingering billing rate problem." Hightower Decl., Ex. E, ¶ 13.

## II. Legal Analysis

The Internal Revenue Code (the "Code") requires employers to deduct social security and income taxes from the wages paid to employees. *See* 26 U.S.C. § 3102(a) (social security or FICA tax); *id.* § 3402(a) (income tax). The deducted amounts which

---

**3.** All four plaintiffs submitted affidavits in opposition to the government's motion for summary judgment. These affidavits are substantially the same with the exception of certain additions in the affidavits of Carter and Jones that do not appear in the Taylor and Richardson affidavits, which additions will be discussed *infra* at 195. For simplicity, we will cite only the Carter affidavit.

are withheld from the paychecks are held by the employer as a special trust fund for the benefit of the United States, *see id.* § 7501, and must be paid to the government on a quarterly basis, *see* 26 C.F.R. § 31.6011(a)-4. Liability for the payment over of withholding taxes arises at the time the sums are withheld from the employees' wages rather than at the later date when the employer's quarterly tax return is filed. *See Bolding v. United States*, 565 F.2d 663, 669 (Ct.Cl.1977); *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). If the employer fails to make the required payments, the Government may actually suffer a loss because the employees are given credit for the amount of the taxes withheld regardless of whether the employer ever pays the money to the Government. *See Bolding*, 565 F.2d at 669. Accordingly, Section 6672 of the Code [4] supplies an alternative method for collecting the withheld taxes. Pursuant to this section, the government may assess a penalty, equal to the full amount of the unpaid tax, against a person responsible for paying over the money who willfully fails to do so. The section reflects "a congressional judgment that because amounts withheld from employees salaries are 'treated as a trust fund ... persons responsible for their paying over should be individually liable, as well as the corporation for their diversion.'" *Schwinger v. United States*, 652 F.Supp. 464, 466 (E.D. N.Y.1987) (quoting *Spivak v. United States*, 370 F.2d 612, 615 (2d Cir.), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967)). This section may only be utilized where the tax cannot be collected from the corporation itself. *See Bolding*, 565 F.2d at 669 & n. 3. Courts have recognized that "[t]he statute is harsh, but the danger against which it is directed—that of failing to pay over money withheld from employees until it is too late, because

the company has gone broke—is an acute one against which, perhaps, only harsh measures are availing." *Wright v. United States*, 809 F.2d 425, 428 (7th Cir.1987); *accord Simpson v. United States*, 664 F.Supp. 43, 45–46 (E.D.N.Y.1987).

The assessment of the tax, pursuant to Section 6672, creates a *prima facie* case of liability. *See Lesser v. United States*, 368 F.2d 306, 310 (2d Cir.1966) (en banc); *Schwinger*, 652 F.Supp. at 466. The persons against whom the penalty is levied bear the burden of establishing, by a preponderance of the evidence, that at least one of the two elements of the statute, as delineated below, has not been met. *Schwinger*, 652 F.Supp. at 466. Because the assessment is presumed valid, the facts underlying the assessment need not even be presented to the Court for summary judgment to be awarded. *United States v. Mauro*, 243 F.Supp. 413, 415 (S.D.N.Y. 1965); *accord United States v. Blackwell*, 76–2 U.S.T.C. ¶ 9742 at 85,387 (D.Conn. 1976). Plaintiffs have the burden of coming forward with evidence that demonstrates the existence of a genuine issue of material fact in order to defeat the motion. Plaintiffs state that their affidavits raise the issue of state of mind or intent, and therefore, summary judgment should not be granted.

A person is liable under Section 6672 if (1) he or she was under a duty to collect, account for, and pay over the taxes (a "responsible person"); and (2) the failure to pay the taxes was "willful." *Schwinger*, 652 F. Supp at 466; *accord Simpson v. United States*, 664 F.Supp. at 46.

## A. "Responsible Person"

The Government submits that the plaintiffs are "responsible persons" under the statute. In a recent opinion, Judge McLaughlin, of the Eastern District of

---

**4.** Section 6672 provides in pertinent part:
(a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any

such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over.
This section creates what is known as the "100% penalty."

New York, comprehensively defined the term "responsible person" in the context of withholding tax payment liability. Such a person is one

'with power and responsibility within the corporate structure for seeing that the [withheld] taxes ... are remitted to the Government.... This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds.' '[D]ay to day control is ... unnecessary for a finding of responsibility,' but ' " 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds." ' Responsibility has been described as depending on 'whether the person had control of the disbursements of the taxpayer, that is, whether "he had the final word as to what bills should or should not be paid and when," ' but 'final' in this context indicates significant rather than exclusive control.

652 F.Supp. at 466–67 (citations omitted) (brackets and ellipses in original).

Factors which may be considered in determining whether a person is a "responsible person" are:

(1) identity of officers, directors and shareholders of the corporation;

(2) duties of the officer as outlined by the corporate by-laws;

(3) ability of the individual to sign checks of the corporation;

(4) identity of the individuals who were in control of the corporation; and

(5) identity of the individuals who hired and fired employees.

*Silberberg v. United States,* 524 F.Supp. 744, 747 (E.D.N.Y.1981). The government has furnished evidence relative to all of these factors. For example, the government has distilled from the Board minutes[5] the titles of the plaintiffs in this action; each plaintiff was a corporate officer as well as a board member. The government appraised the responsibilities of the seven board members and determined that four of the seven had authority to write and/or sign checks. Evidence of the check-writing authority of the plaintiffs was provided to the Court. *See* Hightower Decl., Ex. A. Check-writing authority, particularly with respect to payroll checks, is particularly important since it carries with it the power to pay the withheld taxes over to the Government rather than to make other disbursements. *Bolding,* 565 F.2d at 671, 673; *Simpson,* 664 F.Supp. at 46–47.[6] Plaintiffs claim that because the checks were prepared by others and submitted to the Board, they are not responsible persons. The Government is correct in stating that a person does not divest himself of this responsibility by delegating his authority. *See Scott v. United States,* 702 F.Supp. 261, 264 (D.Colo.1988) (" 'under no circumstances does the delegation of the obligation to pay taxes relieve a responsible person of liability' ") (quoting *George v. United States,* 819 F.2d 1008, 1012 (11th Cir.1987); *Koegel v. United States,* 437 F.Supp. 176, 181 (S.D.N.Y.1977).

Furthermore, the Government's case does not depend exclusively on the authority to write checks. The minutes of the Board meetings clearly support the Government's assertion that the plaintiffs were involved "in routine business concerns such as corporate funding, bookkeeping, salaries, and hiring and firing." Government's Memorandum of Law at 3. Likewise, the minutes simultaneously refute the assertions of the plaintiffs that they were not intimately involved with all

---

**5.** Pursuant to the second factor, the corporate minutes were used in lieu of the corporate by-laws to provide a description of the officer's duties.

**6.** The fact that two signatures were required in order for the payroll checks to be honored by Manufacturers Hanover does not diminish this authority in any way. *See Simpson,* 664 F.Supp. at 48. Furthermore, Section 6672 contemplates the possibility of more than one responsible person. *See Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981) (per curiam). Where each officer has the requisite level of authority, each is individually responsible for the payment of the withholding and income taxes. An officer cannot dispossess himself of this obligation simply because he shares it with others. *Bolding,* 565 F.2d at 671; *Silberberg,* 524 F.Supp. at 747.

of CHAS' activities, and that they only got involved where high-level employees were concerned. Carter Aff. ¶ 15(b). For example, the minutes show that the Board concerned itself with such matters as the hiring of a secretary/receptionist (Hightower Decl., Ex. F at 3, 11), the work performed by the data clerk and clerk-typist (*id.* at 7), the performance of the fiscal staff generally (*id.* at 4), the conditions of the books and records (*id.* at 5), and the corporation's tax problems (*id.* at 4). In addition, relative to the second *Silberberg* factor regarding the duties of the officers, the minutes point out that the Board, while correcting the job description of Executive Director, took pains to point out that the "Board is a Board of Directors not an *Advisory* Board." *Id.* at 3 (emphasis in original).

The Court appreciates that plaintiffs in this case volunteered their time and effort to the organization. Although they mention this fact in their affidavits, the plaintiffs did not argue in their memorandum of law that they should not be held to be "responsible persons" because of this fact. One court recently recognized that

> [t]here is a sufficient social value in having individuals agree to serve on the boards of hospitals, schools, houses of worship, and the like that society ought to be willing to permit such service to be unhindered by the risk of massive personal tax liability. Of course, unpaid service on the board of a not-for-profit institution should not confer automatic immunity from the strictures of section 6672. If a board does take an active role in an institution's financial affairs—particularly its tax affairs— ... the board members may well be deemed responsible persons.

*Simpson*, 664 F.Supp. at 49.

 In *Simpson*, the Court did not hold the board of trustees of a hospital liable as responsible persons, although it did hold the Executive Director of the hospital liable. The trustees in *Simpson*, contrary to the plaintiffs in the instant case, were not "involved in the day-to-day operation of [the corporation], did not sign checks, did not decide which creditors would be paid,

did not hire and fire employees, and did not involve themselves in the collection, accounting for, or payment over of withholding taxes." *See id.* Accordingly, despite the not-for-profit nature of the organization, it is appropriate to hold the plaintiffs here, officers and directors all, liable as responsible persons in light of their involvement in all of the routine business concerns described above. The first part of the statute being satisfied, we must go on to consider the second requirement of "wilfulness."

### B. *Willfulness*

To satisfy the second part of the statute, the plaintiffs failure to pay over the taxes must be "willful." "Willfulness" for the purposes of Section 6672 does not have exactly the same meaning as in the context of criminal law. Conduct that is willful under Section 6672 need not reflect "an evil motive or an intent to defraud." *Kalb*, 505 F.2d at 511. Willful action is defined as " 'voluntary, conscious and intentional—as opposed to accidental-decisions not to remit funds properly withheld to the Government.' " *See id.* (quoting *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970)). Mere negligence is not willfulness; however, " 'reckless disregard for obvious or known risks' " is considered willful. *See id.* (quoting *Monday*, 421 F.2d at 1215). The failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government is also deemed to be willful conduct. *See id.*

The plaintiffs allege that their conduct does not rise to the level of willfulness; rather, it was merely negligent. *See* Plaintiffs' Memorandum of Law at 9. They also assert that the question of intent or state of mind raises a genuine issue of material fact. Summary judgment on the question of willfulness is appropriate, however, if we find that the responsible persons had knowledge of payments to other creditors after being aware of the failure to pay the withholding and income taxes. *See Schwinger*, 652 F.Supp. at 469 n. 3 (knowledge of payments to other creditors despite

nonpayment of tax liability sufficient for summary judgment on the question of wilfulness); *see also Kalb,* 505 F.2d at 511 (granting summary judgment where wilfulness shown by knowledge).

■ Plaintiffs acknowledge that they knew that payments were "late," but they assert that they did not know that payments were not being made. Carter Aff. ¶ 12. Plaintiffs state that they did not "authorize the payment of other creditors with the knowledge that such payment was to the preference of paying withheld and FICA taxes." *Id.* at ¶ 11. It is undisputed, however, that plaintiffs continued to pay employees' wages as well as other routine debts. It is also not disputed that CHAS never paid over the taxes for the last two quarters of 1984 and the first three quarters of 1985. Because FICA and withholding taxes are due and owing, and thus technically belong to the Government, at the time the employee is paid, *see Bolding,* 565 F.2d at 669; *Kalb,* 505 F.2d at 509, payment of employees wages while previously incurred withholding and FICA taxes have not been paid over constitutes payments to creditors other than the Government. *See Feist v. United States,* 607 F.2d 954, 960–61 (Ct.Cl.1979); *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975); *Roth v. United States,* 567 F.Supp. 496, 499 (E.D.N.Y.1983), *aff'd mem.,* 742 F.2d 1434 (2d Cir.1984). Thus, plaintiffs' own admissions that payments were known to be somewhat "late," together with the conclusion that the corporation continued to pay its routine debts, support a finding of willful conduct.

There are, however, other circumstances that indicate that plaintiffs' conduct was willful. As outlined above, a responsible person who acts, or fails to act, with a "reckless disregard of obvious or known risks" is deemed to have acted "willfully" for purposes of Section 6672. Plaintiffs assert that they took "corrective action" when they found out that the payments were late. Carter Aff. ¶¶ 11–13. This corrective action is vaguely defined as "retaining outside accountants and criticizing CHAS' paid professional administrators." *Id.* at ¶ 12. Plaintiffs assert that this ac-

tion was "reasonable" under the circumstances. *See Feist,* 607 F.2d at 961 ("The concomitant of this rule [of reckless disregard] must be that absence of willfulness can be proved by an affirmative showing that the responsible person did *not* disregard his duties, and that he took all reasonable efforts to see that such taxes would in fact be paid....") (emphasis in original).

An examination of the corporate minutes indicates that plaintiffs were aware of late payments and "tax problems" as early as May 3, 1984. Hightower Decl., Ex. F at 4. Further, the minutes of the June 12, 1984 board meeting reflect the fact that "Program Director Roark struggling (sic) with payroll taxes with which she is unfamiliar." *Id.* at 7. In addition, plaintiffs were aware of the lack of adequate performance by the "fiscal staff," Hightower Decl., Ex. F at 5–6, 8; they knew that the corporation's bookkeeping was in serious disarray and that because of this confusion, an audit by New York City had to be postponed, *id.* at 8; they were specifically apprised of the "grave problem" of the Tier I (payroll) bank account dating back to February of 1984 and the problems that existed regarding the compilation of the 941 form (FICA withholding form), *id.* at 8; and they even terminated one of the paid administrators because of the problems, *id.* at 12 (referring to termination letter of June 15, 1984 sent from Board to Mr. Bruce, Asst. Director for Administrative Services). All of these problems gave rise to the duty to follow up and see that the taxes were paid. *See Wright,* 809 F.2d at 427; *Simpson,* 664 F.Supp. at 47; *Schwinger,* 652 F.Supp. at 469. Failure to do so constitutes the reckless disregard that meets the willfulness requirement. *Kalb,* 505 F.2d at 511; *Schwinger,* 652 F.Supp. at 469; *Gold v. United States,* 506 F.Supp. 473, 480 (E.D. N.Y.), *aff'd men.,* 671 F.2d 492 (2d Cir. 1981). Despite the plaintiffs' assertions that they took "correction action," the income or FICA taxes for the last two quarters of 1984 and the first three quarters of 1985 were never paid. This extended period of nonpayment plainly indicates that they did not take "all reasonable efforts to see that such taxes would in fact be

paid...." *Feist*, 607 F.2d at 961. CHAS was obligated to pay the FICA and withholding taxes to the government, even if it meant that they would have to shut down their operation. *See United States v. Hill*, 368 F.2d 617, 621 (5th Cir.1966); *Schwinger*, 652 F.Supp. at 468; *Marker v. United States*, 73–2 U.S.T.C. ¶ 9688, at 82–232 (E.D.Pa.1973). Therefore, in light of all of the above, plaintiffs are deemed to have acted "willfully" under the second part of Section 6672.

Two of the plaintiffs (Carter and Jones), in a change from the position asserted in each's Petition and Protest filed with the IRS, allege, upon information and belief, that the money due the government was embezzled by corrupt employees. Carter Aff. ¶ 18. These plaintiffs assert that "[t]o the best of [their] recollection, payroll tax checks were prepared and signed and ready for transmittal to the IRS." *Id.* There is no assertion, however, that either of these two plaintiffs ever saw such checks, or, if they did, for which quarters they may have seen such checks. Similarly, no person is identified as the "preparer" of such checks, nor is it made known who signed such checks. Likewise, plaintiffs have not disclosed with whom these allegedly signed checks were left to be transmitted to the IRS, and whether this person was someone on whom the plaintiffs could reasonably rely. Finally, although these plaintiffs state that "former administrative employees of CHAS are currently under investigation by the City of New York for embezzlement," *id.*, in the months since these affidavits were filed, there have been no supplemental submissions updating, or for that matter concretizing, the situation.

We conclude that these vague and conclusory assertions do not rise to the level of "material facts" which would preclude summary judgment. *See Scott v. United States*, 702 F.Supp. at 264 (rejecting assertions, without any supporting evidence, of embezzlement by other employee). These assertions, furthermore, are not adequate to controvert the plaintiffs' own admissions that they were aware that the corporation was not meeting, in timely fashion, its withholding tax obligations to the IRS. To defeat this motion, plaintiffs would have to come forward with facts more specific and concrete than those alleged here. "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to ... [find for the party opposing the motion.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). While we are mindful that courts are ordinarily wary of granting summary judgment when "state of mind" is in issue, *see Wakefield v. Northern Telecom, Inc.*, 813 F.2d 535, 540 (2d Cir.1987), in the instant case, as shown *supra* at 194, plaintiffs' knowledge, rather than a less provable subjective intent is at issue. As the government is entitled to the presumption that the assessment is valid, and since the plaintiffs have failed to prove by a preponderance of the evidence any fact to controvert that they were responsible persons who recklessly disregarded the risks of nonpayment of the income and FICA taxes, summary judgment is appropriate. *See Schwinger*, 652 F.Supp. at 469 n. 3.

The Clerk of the Court is directed to enter summary judgment in favor of the government and to dismiss the plaintiffs' complaints.

SO ORDERED.