Stephen R. WRIGHT, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 86–1540.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1986.

Decided Jan. 14, 1987.

---

James O. Beavers, Hershey, Bliss, Beavers & Periard, Taylorville, Ill., for plaintiff-appellant.

Deborah Swann Mbye, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Stephen Wright appeals from a judgment of the district court, made after a two-day bench trial, upholding a $61,000 assessment against him for willful failure to pay withholding taxes. 26 U.S.C. § 6672. (He had paid part of it, then sued for a refund, which is why the case comes to us from a district court rather than the Tax Court.) The only question is whether the finding of willfulness, made by the district court in an oral opinion, is clearly erroneous.

Single Ply Roofing and Sheet Metal Company, a roofing contractor owned and operated by Roger Morlan, got into financial trouble. Its banker put Morlan in touch with two local businessmen, Wright and Neil Pfeiffer, the principals of a pair of construction companies, Caturfield Builders, Inc. and Vector Industries, Inc. Pfeiffer and Wright lent Single Ply $50,000 and agreed to handle Single Ply's business affairs. In exchange, Morlan turned over control of the company to the two men, though he continued as president. Wright was made corporate secretary, Pfeiffer corporate treasurer.

In 1981, when the agreement was made, both Pfeiffer and Wright knew that Single Ply had failed to remit to the government some $20,000 in withholding taxes. Single Ply retained Wright's personal lawyer (Wright testified, however, that he didn't know about this retention) to negotiate the delinquency with the Internal Revenue Service. These taxes eventually were paid and are not in issue in this case.

Pfeiffer handled the administrative end of Single Ply's business. Wright's primary responsibility was to teach Morlan how to estimate the profitability of roofing jobs so that Morlan would know how much to bid and could keep tabs on the costs of the contracts awarded to Single Ply. He met with Morlan every two weeks or so. He did not receive Single Ply's accounts-payable reports (these were reviewed by Pfeiffer), nor did he review its books. He did review job-costing reports that listed labor costs, including withholding taxes, but the reports revealed neither the amount of withholding taxes nor how much of the labor costs were still payable and how much had been paid.

Two signatures were required on all Single Ply checks. Morlan and Pfeiffer signed most of them, but Wright signed a few, including one repaying the initial loan of $50,000; however, Wright and Pfeiffer immediately replaced the loan. It is undisputed that Morlan and Pfeiffer knew that

Single Ply was not paying withholding taxes.

Single Ply never did get out of its financial hole, and when after a year and a half the agreement with Morlan expired, Wright and Pfeiffer withdrew. Single Ply collapsed (followed by Caturfield, to which Single Ply owed $137,000, and by Vector), owing the government $61,000 in withholding taxes that had accrued during the period of the agreement with Wright and Pfeiffer. Single Ply, Morlan, and Pfeiffer are insolvent, so the government seeks to collect the entire amount from Wright.

Section 6672 casts the net of liability over "any person required to collect, truthfully account for, and pay over" withholding taxes—any "responsible person" in tax jargon, not just the employer and not just the most responsible person. *Howard v. United States*, 711 F.2d 729, 737 (5th Cir. 1983). Wright, who signed checks (as a principal, not a bookkeeper) to creditors of Single Ply at a time when Single Ply owed withholding taxes to the government—who paid the creditors money supposed to be held for the government—concedes that he had sufficient financial responsibilities within the company to be a responsible person within the meaning of the statute. Cf. *Caterino v. United States*, 794 F.2d 1, 5 (1st Cir.1986); *Bolding v. United States*, 565 F.2d 663, 671 (Ct.Cl.1977); but cf. *Bernardi v. United States*, 74–1 U.S. Tax Cas. (CCH) ¶ 9170, at p. 83,215 (N.D.Ill.1973), [available on WESTLAW, DCTU database], aff'd without opinion, 507 F.2d 682 (7th Cir.1974). He further concedes that reckless disregard of a known risk that such taxes will not be paid equals willfulness for purposes of section 6672. *Garsky v. United States*, 600 F.2d 86, 91 (7th Cir.1979).

■ If the question for us were whether reckless disregard had been proved, we might well answer "no," though we have no doubt that Wright was at least negligent. He knew that Single Ply had a history of not paying withholding taxes. The history was relevant because Morlan, who had been responsible for the earlier violation of law, continued to be a principal of the company. Wright also knew that Single Ply's finances weren't improving and he must have known how tempting it is for a floundering company to use the money that it has withheld from its employees' paychecks for purposes seemingly more urgent than paying taxes currently. As he was one of only three principals of a small company he would have had no difficulty finding out the truth of the matter—and the burden of taking care is of course relevant to whether failure to take care is negligent, see *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1947) (L. Hand, J.). Yet for 18 months he signed checks to creditors of the firm without making any effort to find out whether the government was being paid. The withholding history of Single Ply, and its continuing travails, gave him reason to suspect that withholding taxes were not being paid, and he could have discovered whether this was so in a trice.

■ His inaction in these circumstances was negligent, but was it reckless, and hence willful for purposes of section 6672? The word "recklessness" in law covers a spectrum of meaning, ranging from gross negligence in an accident case to the conduct of a robber in shooting at a pursuing policeman without aiming carefully. *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985); *United States v. McAnally*, 666 F.2d 1116, 1119 (7th Cir.1981). The cases are not clear on just where section 6672 cuts the spectrum. But bearing in mind that if a high degree of recklessness were required the purpose of the statute would be thwarted, just by compartmentalizing responsibilities within a business (however small) and adopting a "hear no evil—see no evil" policy, we think gross negligence is enough to establish reckless disregard. Concretely we hold that the "responsible person" is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily. It would have been easy for Wright to look at Single Ply's books. He had a right to look at them and

**428**

the know-how to understand them. A glance would have revealed the tax delinquencies. Every time he signed a check he should have wondered, in light of Single Ply's history of delinquency, the company's modest scale, and the lack of improvement in its fortunes, whether history was repeating itself and he was paying creditors money that belonged to the government.

The best argument for Wright is that he was entitled to rely on Pfeiffer to make sure that withholding taxes were being paid. Pfeiffer did not have Morlan's record of failure to pay such taxes. The division of labor is not negligent even in a small company, and not every principal is charged with knowledge of everything that goes on in the company and with responsibility for any violation of law it commits. But even if we thought that the words simple negligence or even no negligence described Wright's behavior in the circumstances better than gross negligence, which we have said is all the statute requires, this would not carry the day for him. The question for us, as an appellate tribunal, is whether the district judge committed a clear error. See Fed.R.Civ.P. 52(a). The deference that the clearly-erroneous rule enjoins on us in reviewing findings by district judges embraces not only facts of the "who did what to whom" variety but also legal inferences from those facts, such as, "Did Wright's action and inaction amount to reckless disregard and hence willfulness?" Thus for our purposes "willfulness" is as much a fact as how many checks Wright signed. *Hornsby v. IRS*, 588 F.2d 952, 954 (5th Cir.1979) (per curiam); cf. *Mucha v. King*, 792 F.2d 602, 604–05 (7th Cir.1986).

We cannot say that the district court erred clearly in finding that Wright acted inexcusably, knowing what he knew, in failing to make any inquiry into the state of the withholding account. Because of the company's small size and history of noncompliance, the continued participation of Morlan in it, the danger of a company's using an internal division of responsibilities to evade the statute, and (perhaps most important) the continued parlous state of this company's finances, the judge, with the inestimable advantage over us of having observed the principals' actual testimony, was entitled to infer that Wright acted recklessly in failing to inquire into the state of the company's tax withholding account. This conclusion is not inconsistent with *Bolding v. United States, supra.* There were two responsible officers in that case, Bolding and MacMillan, and the court exonerated MacMillan but imposed liability on Bolding. Wright knew less than Bolding but more than MacMillan.

Lest the reach of our decision be exaggerated, we emphasize that merely because a corporate officer has check-signing responsibilities and his corporation is in financial trouble, it does not follow that he can be held liable for any and all failures to pay withholding taxes. Nor have we any quarrel with *Godfrey v. United States*, 748 F.2d 1568 (Fed.Cir.1984), which held that mere knowledge of a past delinquency does not impose strict liability on a responsible officer for delinquencies during his tenure. But if a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against nonpayment. See *Hornsby v. IRS, supra; United States v. Leuschner*, 336 F.2d 246, 248 (9th Cir.1964). Wright did neither of these things. It is not enough that he left it all to Pfeiffer, without even inquiring from him what steps would be taken to prevent a repetition of the tax delinquency—or so at least the district court was entitled to conclude without committing clear error. The statute is harsh, but the danger against which it is directed—that of failing to pay over money withheld from employees until it is too late, because the company has gone broke—is an acute one against which, perhaps, only harsh measures are availing.

AFFIRMED.