Edgar B. THOMSEN, Jr.,
Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 89–1130.

United States Court of Appeals,
First Circuit.

Heard June 7, 1989.
Decided Sept. 29, 1989.

---

James E. Purcell, with whom Partridge, Snow & Hahn, Providence, R.I., was on brief for plaintiff, appellant.

James H. Love, Tax Div., Dept. of Justice, with whom James I.K. Knapp, Acting Asst. Atty. Gen., Pomona, Cal., Lincoln C. Almond, U.S. Atty., Providence, R.I., Gary R. Allen and William S. Estabrook, Tax Div., Dept. of Justice, Washington, D.C., were on brief for the U.S.

Before CAMPBELL, Chief Judge, and REINHARDT* and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

On December 22, 1986, the Internal Revenue Service assessed a penalty under section 6672 of the Internal Revenue Code against plaintiff-appellant Edgar B. Thomsen, Jr. for unpaid federal employment taxes withheld from the wages of employees of C & K Restaurant Supply, Inc. ("C & K") for the second, third, and fourth quarters of 1984. On February 26, 1987, Thomsen paid to the IRS under protest the sum of $13,644.11 representing the amount of the assessment plus accrued interest. Thereafter, Thomsen brought an action in the United States District Court for the District of Rhode Island challenging the assessment and seeking to recover what he had paid. A jury trial was held, and after

* Of the Ninth Circuit, sitting by designation.

plaintiff had presented his evidence and rested, the district court granted the government's motion for a directed verdict. This appeal followed.

### I.

The Internal Revenue Code requires employers to withhold federal income taxes from employees' wages, 26 U.S.C. §§ 3102, 3402 (1986), and to hold such amounts in trust for the United States. 26 U.S.C. § 7501 (1986). The employer must report the amount of taxes withheld quarterly, and is liable for them from the time the wages are paid. The Internal Revenue Service ("IRS") has no recourse against employees once their employers have withheld income taxes from their wages. The Code, however, imposes personal liability not only upon employers but upon their officers and agents who are responsible for collecting, accounting for, and paying over to the government the taxes withheld. 26 U.S.C. § 6672 (1986) provides,

> § 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax
>
> (a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to ... pay over such tax, ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

To be liable under this section, a person must (1) be a "responsible person": *i.e.*, one who is required to collect, account for, and pay over the taxes; and (2) act "willfully" within the meaning of the section. *Caterino v. United States*, 794 F.2d 1, 3 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1978); *Harrington v. United States*, 504 F.2d 1306, 1311 (1st Cir.1974); *Maggy v. United States*, 560 F.2d 1372, 1374–75 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112. The issue here is whether, on the evidence at the close of plaintiff's case, the district court properly directed a verdict in favor of the government.

### II.

We state the facts in a version that is most favorable to Thomsen. Thomsen was the Vice–President of E.B. Thomsen, Inc., a family-owned Rhode Island corporation with its principal place of business in Central Falls, Rhode Island, engaged in the business of selling restaurant supplies such as paper goods, juices, and glassware. In April of 1983, E.B. Thomsen, Inc. started to sell restaurant supplies in Connecticut and found from time to time that it was competing with C & K Distributors, which was operated by a man named Dennis Shortell. Shortell and Thomsen discussed the possibility of combining operations, which they subsequently did by forming a new corporation called C & K Restaurant Supply in August of 1983. At all times during its existence, C & K's stock was owned 25 percent by Shortell's brother, Thomas Shortell; 25 percent by Shortell's wife; and 50 percent by E.B. Thomsen, Inc. The officers of C & K at all times during its operations were Susan Mirabile (Thomsen's sister), President; Dennis Shortell, Vice–President; Thomas Shortell, Secretary; and Thomsen, Treasurer. Both the office and the warehouse of C & K were located in Kensington, Connecticut, and the banks that C & K used were Connecticut banks. At the beginning of C & K's operations, there were approximately eight to nine employees, several of whom also worked for two other companies owned by Dennis Shortell and located at the same address.

During the start-up of operations of C & K in the Fall of 1983, Thomsen visited the premises two to three times a week and assisted in operational matters and sales. Susan Mirabile set up an accounting ledger system for C & K and instructed the bookkeeper in its use, visiting weekly until December of 1983 when she went on maternity leave.

From the beginning, Thomsen and Shortell divided responsibilities. Shortell was responsible for day-to-day operations, handling of funds, payment of bills, and on-site management. E.B. Thomsen supplied purchasing power and products. As Treasurer of C & K, Thomsen was not assigned nor

did he actually undertake any duties involving the handling of funds, payment of bills, writing of checks, disbursing of payroll, withholding or payment of taxes, or any other financial matters of C & K. Thomsen had authority to sign checks of C & K, but signed at the most four checks during the beginning of operations and none during the period from April 1, 1984 until the close of C & K's business in January 1985 —the period for which withholding taxes were not paid. Thomsen testified that he was never involved in any manner with the payment of C & K's taxes, with its books and records, nor with the determination of what creditors of C & K would be paid and when.

In January or February of 1984, E.B. Thomsen, Inc. entered into negotiations resulting in the purchase of a business in Pawtucket, Rhode Island, which acquisition required a major commitment of time from Thomsen and precluded his continued involvement with C & K. It was agreed between the two partners that Shortell would purchase E.B. Thomsen, Inc.'s 50 percent ownership interest in C & K; and Thomsen told Shortell that as of April 1, 1984, he would no longer be involved in the business of C & K. At this point, Thomsen's involvement and responsibility with C & K's business diminished rapidly, eventually coming to an effective halt. The agreement by Shortell to acquire ownership of E.B. Thomsen, Inc.'s shares of C & K never materialized.

The withholding taxes in question were for the period from April 1, 1984 through December 31, 1984 (the last three quarters of 1984)—the period after Thomsen had effectively withdrawn from the business. Forms 941 for each of these three quarters were signed by Shortell and filed with the IRS, but no deposit of the federal tax monies was ever made.

During the period after April 1, 1984, a number of checks made out by C & K to E.B. Thomsen, Inc. in payment for supplies purchased from E.B. Thomsen bounced. Shortell explained to Thomsen or Susan Mirabile on each occasion that the cause was a cash flow problem due to defects in his computer program, and that E.B. Thomsen, Inc. should resubmit the checks for payment. The resubmitted checks sometimes cleared and sometimes bounced a second time. Shortell continued to tell Thomsen that business was prospering: he was hiring new people, getting new contracts, and so forth. As a result, Thomsen assumed payments were being made to all other creditors, and that Shortell was merely exploiting his business relationship with Thomsen by always paying E.B. Thomsen, Inc. last. At one point in December, however, Thomsen told Shortell that he would refuse to ship any more supplies unless he would be paid for them. When C & K's check again bounced twice after a solemn promise by Shortell that the goods would be paid for, Thomsen visited the premises of C & K on January 5, 1985 to investigate. He then discovered for the first time that C & K was in a shambles financially, that other creditors had not been paid either, that the federal employee withholding taxes for the previous three quarters had not been paid, and that there was no cash available to pay the taxes. Thomsen made the decision at that point, with Shortell's concurrence, that the business was no longer viable and that the company should be closed permanently. Shortell volunteered to collect the receivables, promising Thomsen at Thomsen's insistence that the unpaid taxes would be satisfied from the proceeds as a first priority. Thomsen agreed to assign this responsibility to Shortell since Shortell was located in Connecticut, knew most of the customers personally, and would be in a much better position to collect the receivables than Thomsen. C & K's assets at this time included inventory on hand (some of which represented goods E.B. Thomsen, Inc. had shipped just a short time before on Shortell's assurance of full payment) and accounts receivable amounting to $55,000. A week or so later, Thomsen returned to C & K's office with a truck and took possession of the inventory on hand. Thomsen then liquidated the saleable portion of the goods through E.B. Thomsen, Inc., realizing $4,000–$5,000 as a result. He also took with him many of C & K's records and books but not the company

checkbook. After returning to Rhode Island, he asked Shortell by telephone and letter for an accounting on several occasions, but never received one. At one point, he wrote a letter to C & K's attorney, requesting him to pay C & K's Connecticut sales taxes as a first priority and thereafter to apply any receivables collected to C & K's federal employment taxes. There was evidence that subsequent to the January meeting, monies in the amount of approximately $39,000 were deposited in C & K's bank account, presumably from the collection of receivables, and later disbursed; but none of these were paid to the government against C & K's tax liability.

The IRS made an assessment against Thomsen as a person responsible for the payment of C & K's federal employment taxes. Thomsen paid his assessment in full and filed a timely refund suit in the District Court. After Thomsen had presented his case-in-chief, the District Court granted the government's motion for a directed verdict and entered judgment for the United States.

### III.

In *Harrington v. United States*, 504 F.2d 1306 (1st Cir.1974), we summarized the standard applicable to the directing of a verdict:

> Whether the evidence is sufficient to create an issue of fact to go to the jury is solely a question of law to be determined by the court. [citations] The same standard is to be applied by both the trial court and the reviewing appellate court; whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is directed. [citations] The court must view the evidence and any inferences which may reasonably be drawn from it in the light most favorable to the party opposing the motion for directed verdict. [citations] If the evidence is of such quality and weight that reasonable men might reach different conclusions in the exercise of impartial judgment, a motion for directed verdict should be denied. [citations]

*Id.* at 1313–14.

We apply that standard here in regard to each of the two elements upon which Thomsen's liability was predicated: (1) whether Mr. Thomsen was a responsible person within the meaning of section 6672, and (2) whether he acted willfully in failing to pay over the taxes.

### A. *Responsible Person*

■ A responsible person within the meaning of section 6672 includes an officer or employee of a company who is under a duty to collect, account for, or pay over the withheld tax. *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987); *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). "Responsibility is a 'matter of status, duty and authority, not knowledge.'" *George*, 819 F.2d at 1011, quoting *Mazo*, 591 F.2d at 1156. Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. *George*, 819 F.2d at 1011. *See also Caterino v. United States*, 794 F.2d 1, 5–6 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987); *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986); *Monday v. United States*, 421 F.2d 1210 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

■ The district court found Thomsen to be a responsible person because he testified to being the treasurer of the company, to having the authority to issue checks in the name of the company, to having access to all the books and records of the company, to considering himself the true partner of Shortell, at least up until the time when he expressed to Shortell his desire to withdraw from the business, and to having joint authority to order payment of taxes. The district court found that there could be no question that throughout his dealings with Shortell, he was operating as an equal to Shortell in all respects, such that authority to make payments to creditors would necessarily be inferred.

Concrete indications of Thomsen's actual authority in the company include the fact

that his decision to end operations was the decisive factor in making that determination and the fact that at the time of the decision to end operations, he took possession of all the company's books and records as well as the remaining inventory. The district court found that there could be no question that, although he himself did not own stock in the corporation, as a practical matter he stood in the position of E.B. Thomsen, Inc., which owned 50 percent of C & K's stock (E.B. Thomsen, Inc. was a family-owned corporation in which Thomsen owned 45 percent of the stock). Because the district court saw no contested factual issue that would affect the foregoing conclusions, it held that Thomsen was a responsible person as a matter of law, directing a verdict in favor of the government on this issue.

We affirm the court's ruling. Thomsen, to be sure, testified that throughout the period of operation of the company and thereafter, he had delegated responsibility for financial matters, the payment of creditors, the paying over of employee withholding taxes to the government, and so forth to Shortell. But even if the jury accepted this testimony, "delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute." *Harrington v. United States,* 504 F.2d 1306, 1311 (1st Cir.1974). *See also Braden v. United States,* 442 F.2d 342, 343 (6th Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971) (existence of the same duty and concomitant responsibility in others does not relieve a party of his responsibility). As was recently stated,

> Delegation of the actual preparation of tax returns, the keeping of records, the payment of wages and the withholding of taxes does not reduce an otherwise responsible person to the status of one not responsible.

*Grover v. United States,* 691 F.Supp. 1572, 1576 (Mass.Dist.Ct.1988).

That Shortell agreed to accept full responsibility for managing the company's financial affairs did not render Thomsen any the less responsible to pay withheld taxes to the government. The district court was correct in withdrawing the issue of Thomsen's responsibility from the jury.

### B. *Willfulness*

■ "Willfulness" under criminal statutes generally requires bad purpose or the absence of any justifiable excuse, *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), but these elements need not necessarily be present in civil actions. In the civil context, "willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks." *Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). The statutory penalty imposed by section 6672 is civil in nature, *Cash v. Campbell,* 346 F.2d 670, 673 (5th Cir.1965), and its basic purpose is the protection of governmental revenue. *Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963); *Spivak v. United States,* 370 F.2d 612, 616 (2d Cir.), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). It provides a remedy to prevent the unnecessary loss of tax funds by permitting the "taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing." *United States v. Graham,* 309 F.2d 210, 212 (9th Cir.1962). Liability under section 6672, thus, "does not depend upon the presence of bad motive or the specific intent to defraud the government or deprive it of revenue." *Monday,* 421 F.2d at 1216; *White v. United States,* 178 Ct.Cl. 765, 372 F.2d 513, 521 (1967).

■ Courts have held that certain types of behavior—although not involving an intentional failure to pay over withholding taxes to the government—are nonetheless "willful" as a matter of law. For example, a "voluntary, conscious, and intentional act to prefer other creditors over the United States constitutes a willful failure to pay over." *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976); *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975). This is true even though the payments to the other creditors may have been made in

good faith or even in the mistaken belief that the payments were required to be made in preference to payments to the government, *see, e.g., Teel,* 529 F.2d 903, 905 (using funds received from the sale of old inventories to pay cash for more new merchandise resulted in the taxpayers "unwittingly suppl[ying] the necessary willfulness"). *See also Sorenson v. United States,* 521 F.2d 325, 329 (9th Cir.1975). To the extent that such payments have been made with knowledge that withholding taxes were owing to the United States Government, any party found to be a "responsible" person within the meaning of section 6672, may be held personally liable for the taxes. *See Dudley v. United States,* 428 F.2d 1196 (9th Cir.1970); *Brown v. United States,* 591 F.2d 1136 (5th Cir.1979).

The Fifth Circuit has stated that, "[t]he willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government, [citations omitted], such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted." *Mazo v. United States,* 591 F.2d 1151, 1154 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). An example of the application of this principle appears in *United States v. Leuschner,* 336 F.2d 246 (9th Cir.1964).

Leuschner knew that Anders, on whom he relied, had failed to see that such taxes were paid and had preferred other creditors. Yet he did absolutely nothing to see that this did not happen again. He was Anders' superior in the company. He had a duty to see that the taxes were paid. He knew that the withheld moneys were a trust fund for the United States, and were to be paid to it. He knew that Anders, to whom he looked to carry out that duty, had not done it. He could not longer, in good faith, look to Anders to do his duty for him. His complete failure to do anything to see that Anders, or

he himself, performed that duty, is, we think, as a matter of law, a 'voluntary, conscious and intentional' failure.

*Id.* at 248.

While mere negligence is not enough to establish reckless disregard, *see Feist v. United States,* 221 Ct.Cl. 531, 607 F.2d 954, 961 (1979); *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), gross negligence is. "[T]he 'responsible person' is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Wright v. United States,* 809 F.2d 425 (7th Cir.1987).

One court accurately summarized as follows the distinctive fact patterns from which to infer a reckless disregard sufficient to demonstrate willfulness as a matter of law under section 6672:

First, courts have held that reliance upon the statements of a person in control of the finances of a company may constitute reckless disregard when the circumstances show that the responsible person knew that the person making the statements was unreliable. [citation omitted] This requires a finding that the responsible person had knowledge that the other individual had in the past failed to perform adequately with regard to the financial affairs of the taxpayer entity....

Second, courts have held that '[w]illful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government.' [citation omitted] This requires a finding that the responsible person had 'notice' that the taxes had not been remitted in the past....

Third, courts have found that when a responsible person continues to pay other bills knowing that the business is in financial trouble, he willfully violates § 6672 if he fails to make reasonable inquiry as to whether money would or would not be available for payment of

the taxes when they became due. [citation omitted]

*I.R.S. v. Blais*, 612 F.Supp. 700, 710 (Mass. Dist.Ct.1985).

Under these principles, the district court was correct in ruling as a matter of law that Thomsen *willfully* failed to pay over the withheld taxes. As already noted, neither the original delegation to Shortell, while C & K was still operating, of the responsibility to pay the taxes, nor the later delegation to Shortell after the company had ceased operations, to collect the receivables and pay the taxes from out of the monies collected, relieved Thomsen of his status as a responsible person. The only question, then, is whether these same delegations could allow a jury to find properly that Thomsen's failure to pay over the taxes was non-willful. We do not think so. Once a "responsible person" has had clear notice that the person to whom he has delegated responsibility for paying the taxes has wrongfully failed to pay them in the past, he continues to delegate that responsibility only at his peril. Should the "responsible person" continue to delegate, without taking appropriate measures to assure that the delegated person will not repeat the dereliction in the future, the subsequent willfulness of the delegatee in once more failing to pay the taxes will be imputed to the "responsible person." As one court has stated,

> [O]nce [the responsible person was] aware of the liability to the government, [he was] under a duty to *ensure that the taxes were paid* [emphasis added] before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate

affairs daily. The statutory concept of willfulness conveys no such meaning.

*Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

In the present case, Thomsen delegated to Shortell a second time, with full knowledge of the latter's previous irresponsible failure to pay the taxes when due. Shortell responded by disbursing virtually all remaining company funds to other creditors. That Thomsen had, in his own eyes, terminated his relationship with the business, is not determinative. He could not absolve himself of all responsibility for seeing that the taxes were paid to the government under section 6672. It is immaterial, moreover, that Thomsen lacked subjective bad intent. Once on notice that Shortell had failed to pay the taxes, not to mention that Shortell had been mismanaging the company and lying by misrepresenting the well-being of the company, Thomsen was grossly negligent in continuing to leave to Shortell, without appropriate supervision, the liquidation of assets and the payment of taxes therefrom. In such circumstances, Shortell's willfulness was properly imputed to Thomsen.[1]

A jury question would, of course, arise if there were a genuinely disputed issue of fact as to whether Thomsen was actually *on notice* that the person to whom he delegated responsibility for collecting, accounting for, and paying over the taxes had failed to fulfill that responsibility in the past. In the present case, however, it is uncontested that Thomsen learned on January 5, 1985 that Shortell had failed to pay the withholding taxes for the past three quarters. He learned at the same time, of course, of Shortell's mismanagement of the business and of the fact that Shortell had been misrepresenting to him the true state

---

1. A factor also weighing in the government's favor is Thomsen's appropriation of $4,000–$5,000 worth of inventory on hand in satisfaction of C & K's liability to E.B. Thomsen, Inc. This was done at a time when Thomsen was fully aware of the government's claim for unpaid withholding taxes. Thomsen accepts in his brief that this might constitute "willful conduct," but says it is "only willful conduct to that

extent and no more." We have no doubt that this preference was, indeed, direct evidence of willfulness relative at least to the $4,000–$5,000 amount that Thomsen retained. We need not decide in view of the other stated grounds for decision whether and to what extent Thomsen's retention of the $4,000–$5,000 inventory also demonstrated willfulness relative to the entire tax deficiency.

of affairs of the business. Uncontested likewise is the fact that he thereafter delegated to Shortell the responsibility for collecting the accounts receivable and paying the taxes from monies collected. Consequently, there is no question of fact for the jury, and the district court acted properly in directing a verdict for the government on the two issues of responsibility and willfulness.

*The judgment of the district court is therefore affirmed.*