Marvin W. SOLOMONSON, Plaintiff,

v.

UNITED STATES of America, Defendant and Counterclaimant,

v.

Donald Scott Wise, Counterclaim–Defendant.

No. 97–4025.

United States District Court,
C.D. Illinois.

Dec. 16, 1998.

John G. Ames, Orion, IL, for Marvin W. Solomonson, plaintiff.

Gerard A. Brost, U.S. Atty, Peoria, IL, Douglas W. Snoeyenbos, U.S. Dept of Justice, Tax Division, Washington, DC, for USA, defendant.

Donald Scott Wise, Selma, TX, pro se.

## ORDER

McDADE, Chief Judge.

Now before the Court is Defendant's Motion for Partial Summary Judgment, which seeks judgment as a matter of law on both Plaintiff's claim and Defendant's counterclaim against Plaintiff. This case involves federal tax assessments derived from the failure of Premier Family Foods, Inc. ("Premier") to remit taxes withheld from its employees' wages during the last two quarters of 1992 and the first three quarters of 1993.

## I. Local Rule 7.1(D)

The Court first notes that Plaintiff has failed to respond to Defendant's statement of undisputed facts in accordance with Local Rule 7.1(D)(2) by submitting a separate document which numerically responds to each of Defendant's undisputed facts.[1] Plaintiff also failed to submit any additional undisputed facts in the form of a separate document which numerically lists each additional fact relied on with appropriate citations to supporting evidence in accordance with Local Rule 7.1(D)(3). The consequences of these failures are clearly set forth in Local Rule 7.1(D). Accordingly, the Court will treat Defendant's State-

ment of Undisputed Facts as admitted and disregard Plaintiff's noncompliant submissions to the extent that they are not conceded by Defendant.

The Seventh Circuit has "repeatedly ... sustained the entry of summary judgment where the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby concedes the movant's version of the facts." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994). Thus, the Court takes the statements from Defendant's Statement of Undisputed Facts as largely uncontroverted, finds such facts to exist without substantial controversy, and deems them validated as to the trial of this action.

## II. Undisputed Facts

Plaintiff was an incorporator, director, registered agent, and corporate secretary of Premier, a food service business operating out of the Quad Cities. He owned one-third of its stock and was to receive 20% of any profits.[2] He was an authorized signatory on each of Premier's checking accounts, and in fact, signed checks issued on each account.

Premier's financial difficulties were apparent early on in its existence. Plaintiff was to receive a weekly salary of $500.00 from Premier for his services; however, his weekly paychecks continued for only a short time. Likewise, although Plaintiff owned the real property from which Premier operated, he only received rent for two or three months. Over the course of 1992 and 1993, he made a total of $92,-194.43 in personal loans to Premier, and even put his own car up as security for another loan.[3] None of his personal loans were ever repaid.

1. Plaintiff did file a document entitled Statement of Disputed Facts. However, this Statement of .Disputed Facts is not a specific response to Defendant's facts as contemplated in the Local Rules, but, rather a statement of facts that Plaintiff contends are in dispute. This is simply insufficient. Even after being given notice of his Rule 7.1(D) shortcomings

in Defendant's reply, Plaintiff has made no attempt to correct the deficiencies.

2. Donald Scott Wise and Donald T. Wise each owned ⅓ of the remaining stock.

3. These loans were purportedly to be used for purposes of expanding what was represented to him to be a growing business.

In June 1993, Plaintiff learned of an IRS levy on Premier's bank account to collect delinquent withholding taxes from the company's first quarter in business through a discussion with David Scott Wise ("Wise"), who made the business decisions and handled the day-to-day operations of Premier. However, he contends that he was led to believe that this was an isolated error. Other than signing checks prepared for his signature or occasionally writing out checks according to a list that he was given, Plaintiff had little to do with Premier's operations or business dealings and trusted Wise to do a good job managing his investment.

However, Plaintiff became more involved in the company's daily business operations in August 1993, when he learned that checks issued on Premier's account were not being honored, and Wise was nowhere to be found. On August 7, 1993, he closed Premier's bank account and opened a new account to which he was the only authorized signatory. Two days later, acting in his purported capacity as sole shareholder, he executed a document removing Wise and his father, Donald T. Wise, as directors of Premier. He also removed Wise from his position as president and treasurer, removed Donald T. Wise from his position as vice-president, terminated the employment of Roni D. Wise, and terminated his own employment with the company.

On September 25, 1995, a representative of the Secretary of the Treasury made an assessment against Plaintiff in the amount of $28,414.09 pursuant to 26 U.S.C. § 6672. Notice of this assessment and a demand for payment were sent to Plaintiff. Although he once remitted a check in the amount of $149.36 to be applied to the assessment, he subsequently sought to have this payment refunded and has refused to remit full payment.

On March 19, 1997, Plaintiff brought this action pursuant to 26 U.S.C. § 7422(a) seeking a refund of the one payment made and abatement of the taxes assessed against him. Defendant responded with a counterclaim against Plaintiff that also joined Wise as a counterclaim-defendant. On July 16, 1998, Defendant moved for partial summary judgment, asserting that it is entitled to judgment as a matter of law on Plaintiff's complaint and that it is entitled to have its assessment reduced to a judgment against Plaintiff. This Order follows.

## Legal Standard

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved

in favor of either party. *Anderson,* 106 S.Ct. at 2511.

## Discussion

Employers are required by law to withhold federal social security and income taxes from their employees' wages. 26 U.S.C. §§ 3102 and 3402. To enforce this obligation, § 6672 of the Internal Revenue Code provides in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). The taxpayer bears the burden of demonstrating that the assessment made against him was erroneous.

 To be personally liable under this section, a person must satisfy two criteria:

> First, he must be "required to collect, truthfully account for, and pay over" the tax. A person meeting this criterion is commonly referred to as a "responsible person." Second, it must be established that the "responsible person" "willfully" failed to collect, account for or pay over the tax owed. "Willful" in this context means that the person either knew the taxes were not being turned over to the government and nonetheless opted to pay other creditors, or recklessly disregarded a known risk that the taxes were not being paid over; the government is not required to establish that the responsible person deliberately sought to defraud the government.

*United States v. Kim,* 111 F.3d 1351, 1357 (7th Cir.1997) (internal citations omitted). Even unawareness of past failures to pay taxes withheld does not absolve a responsible party's liability, because "a responsible person who *becomes* aware that taxes have gone unpaid in past quarters in which he was also a responsible person, is under a duty to use all 'unencumbered funds' available to the corporation to pay those back taxes." *Id.* Failure to use such funds to pay the tax liability results in personal liability for taxes due to the extent that unencumbered funds were available or became available after he gained knowledge of the problem. *Id.* at 1358.

## I. *Responsible Person*

 The key to determining whether Plaintiff is a responsible person is whether he had "sufficient control of corporate finances that he [could] allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." *Bowlen v. United States,* 956 F.2d 723, 728 (7th Cir.1992). Indicia such as ownership of corporate stock, holding an entrepreneurial interest in the business, and signature authority on corporate accounts have been found relevant to this inquiry. *Id.,* 956 F.2d at 728.

Wise was undisputedly in control of Premier's day-to-day operations and questionable activities; he was the president and treasurer, owned ⅓ of the corporate stock, hired employees (including his wife and sister), fired employees, purchased merchandise on credit, determined which bills to pay, authorized payroll, and was the primary issuer of the company's checks. As such, there is no doubt that Wise was a responsible person within the meaning of § 6672. However, that is not the issue before the Court, and in any event, there can be more than one responsible party per transaction.

 The record contains evidence which suggests that although Plaintiff had an ownership interest and signed corporate checks from time to time, he had little involvement in the day-to-day management of Premier prior to August 7, 1993. In fact, the inference could reasonably be drawn that he was merely a silent partner, whose knowledge was based on what Wise may have mentioned in passing and whose

role was limited to signing checks prepared for his signature in Wise's absence. Although such proof is not foreclosed by the evidence currently of record in this case, there is also no evidence now before the Court that would compel a finding that Plaintiff had any significant involvement in making personnel decisions, calculating payroll, determining which creditors were to be paid, or otherwise directing corporate finances. Similarly, the record fails to establish that he could have refused to authorize payments to certain creditors or that he had any responsibility in connection with making tax payments. Thus, while there is evidence pointing toward Plaintiff's responsibility, there is also evidence pointing toward his lack of responsibility.

■ Section 6672 was not intended to impose liability without personal fault. *Slodov v. United States,* 436 U.S. 238, 253, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Although it appears that Plaintiff in this case bears some of the indicia that may point toward responsible person status, there has not been a sufficient showing of undisputed control prior to August 7, 1993 to support finding at this stage that he could have prevented the default from occurring. Plaintiff's credibility at trial will be crucial to the resolution of this issue. Accordingly, there remains a genuine issue of material fact requiring resolution by a jury with respect to whether Plaintiff was a responsible person at anytime prior to August 7, 1993. The Court cannot make the requested finding as a matter of law, and summary judgment must therefore be denied in this respect.

■ However, with respect to the period of time following August 7, 1993, the result is different. On that date, he arbitrarily closed the Premier account and reopened another account with himself as the sole signatory. He then purported to be the sole shareholder, and in this capacity removed the other officers and directors from their positions. From this point on, Plaintiff's control was exclusive, and he

was the only person who could have remedied past defaults or prevented future defaults from occurring.

Thus, for any time periods following August 7, 1993, the Court finds that the undisputed facts of this case demonstrate that Plaintiff had sufficient control over the financial affairs of Premier to ensure that other creditors did not receive preferential payments to the detriment of the unpaid federal taxes. Accordingly, he is a responsible person for the third quarter of 1993. *Kim,* 111 F.3d at 1357–58.

## II. *Willful Action*

■ The next issue is whether Plaintiff acted willfully during the quarter when the Court has found him to have been a responsible person as a matter of law. "[K]nowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax is willful conduct within the scope of Section 6672", as is the reckless disregard of a known risk that the taxes are not being paid. *Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979); *Running,* 7 F.3d at 1298–99 (finding that "[l]iability does not depend upon the presence of bad motive or the specific intent to defraud the Government or deprive it of revenue" but can be premised by a showing of reckless disregard.) In this respect, a responsible person can be liable under circumstances where he: "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Id., citing Wright v. United States,* 809 F.2d 425, 427 (7th Cir. 1987). This showing of recklessness can also be made by demonstrating that a responsible person failed " 'to correct mismanagement after being notified that the withholding taxes have not been duly remitted.' " *Running,* 7 F.3d at 1299, *citing Garsky,* 600 F.2d at 91.

■ Plaintiff's actions after seizing control of Premier would meet the stan-

dard for a voluntary, conscious decision not to remit. It is undisputed that he was fully aware of Premier's payroll tax defaults in early August 1993. A review of the record reveals that checks signed by Plaintiff after that time were issued to employees and other creditors during the time when money was supposed to be held for the benefit of the government to satisfy the withholding tax liability. *See Wright,* 809 F.2d at 427. This is enough to establish willfulness as a matter of law.

Furthermore, his reckless disregard is also apparent from the record before the Court. It should have been clear to any reasonable person in Plaintiff's position that Premier was in financial trouble. His pay checks and rental payments stopped shortly after they began without explanation, and he periodically loaned more than $90,000.00 of his personal funds to the company, as well as placed his car as collateral to guarantee another loan for Premier. He never saw a dime of profit, and his loans to the company were not repaid as scheduled. He also knew that his personal funds were being used to pay employees and creditors, and that the corporation had failed to remit its payroll taxes at least once.

As the Seventh Circuit recognized in *Wright,* "he must have known how tempting it is for a floundering company to use the money that it has withheld from its employees' paychecks for purposes seemingly more urgent that paying taxes currently." 809 F.2d at 427. Furthermore, Plaintiff should have recognized the seriousness of the withholding tax problem, as it is uncontested that Plaintiff had actual knowledge of an IRS levy against Premier's account in mid–1993. From these facts, it should have been crystal clear to Plaintiff that withholding taxes had probably not been remitted to the government.

As there is no evidence that Premier's financial condition improved, which is evidenced by the fact that Plaintiff continued to advance his personal funds to support the operations of the company and saw no profits, he should have perceived the likelihood that these taxes and other expenses were still not being paid and would not be paid in the future. Even if his initial perception might have been somewhat cloudy, this realization would have become crystal clear after he seized control of Premier in August 1993, yet he failed to take appropriate remedial action to correct the past mismanagement and preserve funds for the payment of withholding taxes. To the contrary, the record demonstrates that he continued to pay other creditors, such as employees, vendors, and utilities; he even wrote one check in excess of $500.00 to himself as reimbursement for some kind of freezer.

Plaintiff owned the building in which Premier's corporate offices were located. In fact, his own personal office was located across the hall from Premier's space. He has admitted that Premier's office door was usually open, which would have enabled him to go into the office. He has also admitted that as one of three shareholders and officers in a small company, he could have examined the corporate books and financial records without difficulty had he simply asked to do so. With his life experience as a licensed agent for the sale of insurance, real estate, and securities, Plaintiff should also have had the know-how to develop a rudimentary understanding of the information contained therein had he attempted to look. Therefore, he was in a position to determine the status of Premier's liability for withholding taxes with little, if any, effort. In fact, the record confirms that he did so and sought legal advice shortly after assuming control of the company.

While the Court is not unsympathetic to Plaintiff's assertions that he was deceived by Wise's continued assurances that the company was viable and prosperous, the simple facts of this case illustrate the unreasonableness of this belief. Accordingly, the Court also finds the requisite reckless

disregard to establish willfulness.[4]

### III. *Limitation on Liability*

 As a taxpayer may limit the extent of his liability by demonstrating that the business did not have sufficient unencumbered funds to satisfy the unpaid taxes after the date he acquired knowledge, the question remains as to what amount of damages Plaintiff is liable to repay. *Kim*, 111 F.3d at 1358.

> [F]unds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds.

*Id., citing Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir.1992). Again, the taxpayer bears the burden of proving that no unencumbered funds were available to remedy the tax deficiency. *Id.*

In this respect, there is little actual evidence in the record, and facts supporting Plaintiff's position are not included in a Statement of Undisputed Facts or proper response to Defendant's Statement of Undisputed Facts. As relevant facts were not presented in the requisite form, they will not be considered by the Court pursuant to Local Rule 7.1(D)(3), and Plaintiff finds himself without competent evidence to rebut Defendant's assertion that he is fully liable.

However, even if the sparse allegations on this issue were considered, Plaintiff has failed to meet his burden of establishing that unencumbered funds were not available after August 7, 1993 to repay the tax liability accrued for that quarter. It appears from the record that the amount of payroll tax liability incurred for the third quarter 1993 was $6,728.51.[5] In Plaintiff's affidavit, he states cursorily and without citation to supporting documents that after he assumed control of Premier, funds totaling $15,131.68 were received, of which he claims to have been legally obligated to pay $4,763.24 in employee wages and $1,728.29 in payroll taxes; he offers no explanation for how he spent the remaining funds, which appear to have been more than sufficient to cover the tax liability for that period. His response adds little to these barren assertions and is equally unsupported. To successfully resist summary judgment, the non-moving party must go beyond the pleadings and produce evidence of a genuine issue for trial. This Plaintiff has utterly failed to do.

 Plaintiff had the burdens of both production and persuasion in connection with his status as a responsible person and the willfulness of his conduct. *United States v. Running*, 7 F.3d 1293, 1297 (7th Cir.1993), *citing Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987). As he has failed to meet either of these burdens for the third quarter of 1993, the Court finds that there are no genuine issues of material fact requiring resolution by a jury for this time period only, and the record is

---

4. Plaintiff argues that under *Wright*, the mere fact that a corporate officer has check signing abilities and his company is in financial trouble does not establish a basis for personal liability. The Court's decision is completely consistent with this finding, as the facts of this case demonstrate that after August 7, 1993, Plaintiff had significantly more involvement than merely being able to sign the corporate checks of a financially burdened corporation. Moreover, *Wright* also holds that "if a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against non-payment." 809 F.2d at 428. There is no competent evidence before the Court that Plaintiff took any steps to guard against non-payment after seizing control of Premier in August 1993. *Id.*

5. A letter dated August 8, 1996, which is attached to Plaintiff's complaint, suggests that Plaintiff may have received a partial abatement of this amount, reducing the tax liability for the third quarter of 1993 to $4,915.45. If that is the case, Plaintiff's liability would be reduced accordingly.

such that no reasonable juror could find in his favor. Thus, Defendant is entitled to judgment as a matter of law against Plaintiff for tax liability incurred in the third quarter of 1993.

## Conclusion

For the reasons set forth herein, Defendant's Motion for Partial Summary Judgment on Plaintiff's Complaint and Defendant's Counterclaim against Plaintiff [# 14] is GRANTED IN PART and DENIED IN PART. The remainder of this matter is referred to Magistrate Judge Kauffman for final pretrial conference.