In re Frank P. MACAGNONE and
Santina Macagnone, Debtors.

United States of America, Appellant,

v.

Frank P. Macagnone and Santina
Macagnone, Appellees.

No. 8:00–CV–563–T–24B.

United States District Court,
M.D. Florida,
Tampa Division.

June 13, 2000.

Philip Doyle, U.S. Dept. of Justice, Tax Division, Washington, DC, for Appellants.

Nicholas B. Bangos, Adorno & Zeder, P.A., Miami, FL, for appellees.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on the United States of America's appeal from the United States Bankruptcy Court's Order on Remand entered January 27, 2000. (B.C. Dkt. 79). Briefs have been filed by both parties, and appellant has also filed a Reply Brief. (B.C. Dkt. 5,6 & 7).

## I. Background

In 1982, appellee Frank P. Macagnone ("Macagnone") formed American Management and Development Company ("AMD"), capitalizing the venture with $500,000.00 of personal funds. (B.C. Dkt. 76 p. 6). He held the title of president and was 50% owner, having given 50% of the company's stock to Billy Barnes ("Barnes"). (B.C. Dkt. 76 p. 6–7). Barnes held the title of vice-president. (B.C. Dkt. 76 p. 56). Macagnone testified that he gave Barnes the stock because "he held a Class A contractor's license and had extensive experience in day-to-day building construction and development activities". (B.C. Dkt. 76 p. 55, 9).

In 1986, AMD entered into a joint venture with a federally insured savings and loan company to build a retirement community known as Tall Pines. (B.C. Dkt. 76 p. 12–13). The savings and loan failed, severely affecting AMD's cash flow. (B.C. Dkt. 76 p. 13). During this crisis, Macagnone testified, "I devoted 100 percent of my time towards obtaining additional financing." *Id.* Previously, Macagnone's responsibilities included locating development opportunities and assessing the financial viability of proposed projects, preparing loan documents, selling properties, and meeting with investors and lenders to secure financing. (B.C. Dkt. 76 p. 10). Barnes was responsible for dealing with subcontractors and managing on-site construction activity. (B.C. Dkt. 76 p. 11). Barnes and Macagnone each claimed the other was responsible for managing the office and the day-to-day accounting, along with employee Judy McAllister Wood ("Wood"). (B.C. Dkt. 76 p. 59, 64, 10 & 11). Wood prepared and signed the Form 941 employee withholding tax returns for the last quarter of 1986 and the first quarter of 1987. (Def. Exh. 4, 5). Wood also prepared payroll checks, but only Barnes and Macagnone had check signing authority. (B.C. Dkt. 76 p. 82; Def. Exh. 6).

Macagnone testified that neither Barnes nor Wood ever gave any indication that the taxes had not been paid. (B.C. Dkt. 76 p. 18). He further testified that Barnes and Wood would tell him they needed funds, and he would try to secure them. (B.C. Dkt. 76 p. 17). He would give the funds to Barnes and Wood, then they would deposit them and make disbursements. *Id.* Because this was the usual routine and the taxes had always been paid, Macagnone never discussed whether they continued to be paid with either Barnes or Wood. *Id.*

Despite Macagnone's efforts, AMD failed to recover, and the corporation filed a Chapter 11 bankruptcy petition in March of 1988. (B.C. Dkt. 76 p. 22). After Macagnone was discharged in bankruptcy on March 11, 1991, he learned that the United States had assessed a civil penalty against him under 26 U.S.C. § 6672, for AMD's failure to pay withholding taxes for the last quarter of 1986 and the first two quarters of 1987. (B.C. Dkt. 4). Macagnone initiated an adversary proceeding seeking, in part, a determination of his liability for this penalty. *Id.* After a hearing held June 24, 1998, the bankruptcy court determined that Macagnone met the definition of a 'responsible person' under 26 U.S.C. § 6672, but did not 'willfully' fail to pay the employee withholding taxes during the periods in question. (B.C. Dkt. 41). Accordingly, Macagnone was held not liable for the assessed trust fund penalties totaling $55,107.60. *Id.*

The United States appealed to the United States District Court for the Middle District of Florida on three grounds, arguing that the bankruptcy court erred in exercising jurisdiction over the matter, in failing to abstain after it determined it had jurisdiction, and in concluding that Macagnone was not liable. (B.C. Dkt. 41). The District Court found the first two grounds to be without merit. *Id.* Regarding liability, however, the court found the bankruptcy court erred in allocating the burden of proving willfulness to the United States. *Id.* Thus, the District Court affirmed in part and reversed in part the bankruptcy court's ruling. (B.C. Dkt. 65). A final evidentiary hearing was held on November 1, 1999, at which Macagnone had the burden of proving that his failure to pay withholding taxes was not willful. *Id.* The Bankruptcy Court held that Macagnone proved by a preponderance of the evidence that AMD's failure to pay the withholding taxes was not willful under § 6672. (B.C. Dkt. 79). The United States appeals this adverse ruling. (B.C. Dkt. 81).

## II. STANDARD OF REVIEW

■■■ Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, this Court cannot modify or reverse the bankruptcy court's finding of fact unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Conclusions of law are reviewed *de novo* by the appellate court. See *Bosarge v. U.S. Dep't of Educ.*, 5 F.3d 1414, 1417 (11th Cir.1993). Whether a taxpayer's particular conduct is willful is a question of fact. *Wilson v. United States*, 250 F.2d 312, 325 (9th Cir.1958).

## III. DISCUSSION

■■■ Determining liability under 26 U.S.C. § 6672 requires a two-prong analysis: 1) whether a person is a responsible party required to collect, account for and pay employee withholding taxes, and if so, 2) whether he willfully failed to do so. *Mazo v. Rosenzweig*, 591 F.2d 1151, 1153 (5th Cir.1979). The government bears the burden of proving that the taxpayer is a responsible person, but once this is established, the burden shifts to the taxpayer to prove the failure was not willful. *Id.* at 1154. It is well established in the Eleventh Circuit that, "something less than actual knowledge, specifically, 'a reckless disregard of a known or obvious risk' is sufficient to satisfy the willfulness requirement". *Malloy v. United States*, 17 F.3d 329, 332 (11th Cir.1994).

■ The critical issue on this appeal is whether Macagnone showed such reckless disregard for a known or obvious risk by failing to ascertain whether monies withheld from employees wages were remitted to the government after his business began to founder. The United States argues that applying *Malloy* to the facts of this case, the Bankruptcy Court erred in finding Macagnone not liable under § 6672.[1] This Court does not agree. Malloy invested in a condominium management company that had experienced financial difficulties and had a history of tax delinquency; he specifically formed a new corporation to avoid liability for any unknown debts. *Id.* at 332. When the new corporation encountered financial difficulties, Malloy failed to inquire whether taxes were being paid, despite his knowledge that the same employees who had been responsible for paying taxes for the former corporation were also responsible for paying taxes for the present one. *Id.* The 'known or obvious risk' was present because the circumstances under which the same employees failed to pay taxes were recurring. *Id.* Malloy showed 'reckless disregard' by failing to inquire whether taxes were being paid. *Id.*

■ While the reckless disregard standard of willfulness does not require actual notice of present delinquencies, *Malloy* indicates it does require notice of previous delinquencies to establish a known or obvious risk. Unlike Malloy, Macagnone did not have such notice. The three quarters in question were the first delinquencies in the life of AMD. (B.C. Dkt. 76 p.12). While it is true that Macagnone did not inquire about the status of the taxes, it is clear under *Malloy* that his failure to do so, absent a history of delinquency, does not equal reckless disregard. *Malloy*, 17 F.3d at 332 (holding taxpayer's failure to inquire whether taxes were paid when he

knew that the same employees under similar financial circumstances had previously failed to pay taxes was reckless disregard of a known or obvious risk).

The United States further argues that the bankruptcy court ignored relevant precedent in making its determination that Macagnone is not liable under § 6672. The United States urges this Court to follow the "gross negligence" standard of willfulness adopted by the Seventh Circuit in *Wright v. United States*, 809 F.2d 425, 427 (7th Cir.1987). There the court held, "the 'responsible person' is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Id.* at 427. Wright gained a controlling interest in a roofing company that was in financial trouble, but the previous owner retained the title of President. *Id.* at 426. At the time he got involved, Wright knew the company had failed to remit some $20,000 in withholding taxes to the government, but these taxes were eventually paid. *Id.* The company's financial situation worsened, and Wright pulled out. *Id.* The company ultimately collapsed, owing $61,000 in withholding taxes that accrued during the time Wright was involved. *Id.* The court held Wright was liable for the penalty because he had knowledge of the prior delinquency, the same individual responsible for the prior delinquency continued to be a principal of the company, the company's financial picture worsened, and Wright could have easily ascertained whether the taxes were being paid. *Id.* at 427.

While the court in *Wright* uses the phrase "gross negligence", this is essentially the same standard used in *Malloy*, applied to similar facts. Wright's knowledge of the history of delinquency by the same individual, coupled with the continu-

1. The Bankruptcy Court did omit some language from its *Malloy* quote. (B.C. Dkt. 79 p. 8). It should read, "The willfulness requirement is satisfied if the responsible person acts with *a reckless disregard of* a known or obvious risk ..." *Malloy*, 17 F.3d at 332 (quoting *Mazo*, 591 F.2d at 1154) (emphasis added).

ing financial decline, constitutes a known or obvious risk. Wright's failure to determine whether the taxes were paid, when he was in a position to find out readily, constitutes reckless disregard of the risk. The *Wright* court specifically warned, "Lest the reach of our decision be exaggerated, we emphasize that merely because a corporate officer has check-signing responsibilities and his corporation is in financial trouble, it does not follow that he can be held liable for any and all failures to pay withholding taxes." *Id.* at 428. The facts supporting a finding of willfulness in *Wright* are not present in the case before this Court, therefore Macagnone cannot be found willful under that standard.

The United States cites other authority for the proposition that reckless disregard of a grave risk that withholding taxes are not being paid establishes willfulness. *Thomsen v. United States*, 887 F.2d 12 (1st Cir.1989) (holding taxpayer was liable for failure to pay withholding taxes, when he delegated responsibility to another employee); *Phillips v. United States*, 73 F.3d 939 (9th Cir.1996) (holding taxpayer was liable for failure to pay withholding taxes although he was forced for medical reasons to be absent from managing the company). However, in *Thomsen*, the taxpayer had actual notice of an employee's failure to remit taxes, yet continued to delegate that responsibility to the failing party without taking steps to insure payment. *Thomsen*, 887 F.2d at 16–17. Similarly in *Phillips*, the taxpayer was aware that the employee he entrusted with the responsibility to remit the withholding taxes had failed once before to pay them, yet the taxpayer never inquired whether taxes were being paid. *Phillips*, 73 F.3d at 943. Again, the key factual difference between these cases and the one before this Court is that Macagnone had no knowledge of a previous delinquency, therefore there was no known or obvious risk.

The United States further argues that the Bankruptcy Court erred in relying on

*In re Haas*, 48 F.3d 1153 (11th Cir.1995), to make a determination whether Macagnone is liable under 26 U.S.C. § 6672, because that case discusses willfulness under another tax code, 11 U.S.C. § 523(a)(1)(C). That case has been abrogated by *In re Griffith*, 206 F.3d 1389 (11th Cir.2000) regarding its ruling on the dischargeability of tax debts in bankruptcy, but its discussion of willfulness under § 523(a)(1)(C) remains undisturbed. The standard discussed is one of "voluntary, conscious, and intentional" failure to pay taxes, not one of reckless disregard. *In re Haas*, 48 F.3d at 1155. Because this is not the standard of willfulness under § 6672, it is not applicable to the case before this Court. The Bankruptcy Court's reliance on *In re Haas*, however, did not affect its proper determination of Macagnone's liability under the applicable precedent of *Malloy*.

Accordingly, the Bankruptcy Court's Order on Remand (B.C. Dkt. 79) is AFFIRMED.